WILLIAM B. RIKER & SON COMPANY and JAYNES COMPANY

*v.*

UNITED DRUG COMPANY.

---

WILLIAM B. RIKER & SON COMPANY

*v.*

UNITED DRUG COMPANY.

[Decided May 2d, 1911.]

1. The stockholders of a corporation, at a meeting to determine whether the corporation shall be dissolved as authorized by the statute. act not as trustees for each other, but individually, and may vote as their views of their individual interests may dictate; but a dissolution may not be used by the majority to commit a fraud on the minority, and, in the absence of fraud or acts beyond their lawful powers as stockholders, the minority may not enjoin the exercise of the right of the majority to dissolve the corporation.

2. The provisions of the Corporation act (*P. L. 1896 p. 277*), permitting the dissolution of corporations, are not qualified by the provisions defining the effect of a dissolution and directing the proceedings for

winding up on dissolution, and the court on a proposed dissolution may not in advance undertake to determine that the right to vote on the question of dissolution must be taken away on the ground that, in voting, the stockholders do so with the object of carrying out a plan violative of the statute governing proceedings after dissolution.

3. A preliminary injunction, restraining a corporation from refusing goods to a stockholder on the same conditions that goods are furnished to other stockholders, does not affect the right of the corporation to proceed to dissolve pending the suit for the injunction; but, so long as the corporation continues to exist, it must comply with the preliminary injunction.

4. That a motive for the dissolution of a corporation is to terminate rights given to stockholders by a by-law of the corporation does not make the proceedings for dissolution a fraud on minority stockholders.

5. That the dissolution of a corporation is recommended by the directors, or is intended by the majority stockholders in giving consent to it, as a step in a proceeding to reorganize the financial and business affairs of the corporation, does not of itself make the proceedings fraudulent or colorable under the statute authorizing the dissolution of corporations.

6. Where, on dissolution of a corporation, the plan for reorganization thereof contemplates additional capital, temporary and permanent, the payment into the treasury of the reorganized corporation of a substantial sum in cash, and the creation of a fund by securities of a substantial sum of preferred stock as a basis for procuring capital in the future, when considered advisable so to do, the changes in the financial organization of the corporation are substantial and not merely colorable, and the proceedings for the dissolution of the corporation are not objectionable as colorable.

7. The court. in a suit by a stockholder to enjoin action by stockholders on a resolution for the dissolution of the corporation, will not determine the validity of the proposed steps after dissolution, but the status of the corporation on dissolution is governed by Corporation act (*P. L. 1896 pp. 295, 296 §§ 53-60*), making the directors at the time of dissolution statutory trustees with powers and duties, and the stockholders may not in advance control the directors as statutory trustees, especially when the plan proposed before dissolution for the reorganization of the corporation is beyond the powers of the corporation without the consent of all the stockholders.

On bill and supplemental bill. On bill. On applications for preliminary injunctions. ·

*Mr. Robert H. McCarter* and *Mr. Seibert* (of the New York bar), for the complainants.

*Mr. John R. Hardin* and *Mr. Fuller* (of the Massachusetts bar), for the defendant.

EMERY, V. C. (orally).

There are two cases before me. One of the William B Riker & Son Company and Jaynes Company, complainants, and United Drug Company, defendant, on original bill and supplemental bill, and the second, between William B. Riker & Son Company, complainant, and United Drug Company, defendant, on bill. There is an application for preliminary injunction in each case.

The directors of the defendant company on January 17th, 1911, adopted a resolution declaring "that in the judgment of the board it is advisable and most for the benefit of the United Drug Company that the same should be forthwith dissolved." This was in regular form under the provisions of section 31 of the General Corporation act relating to voluntary dissolution (*P. L. 1896 p. 287*), and a meeting of the stockholders was duly called, under that section, for the 7th day of March, 1911, to take action upon this resolution. In connection with the notice of the directors' adoption of the resolution and of the stockholders' meeting to take action upon the resolution, the directors prepared and sent out to the stockholders a circular letter signed by every director of the company, giving in detail a plan which has been approved by the directors, and the reasons in detail are set out in the circular. This plan is referred to in the circular as a plan for the reorganization of the affairs of the company, and as one designed by the directors to accomplish certain results—*first,* to provide additional capital for the immediate requirements of the company, and also future additional capital, both made necessary by the remarkable increase in the business of the company; *second,* to give to the preferred stockholders of the company the option of sharing in the future success of the company's business by the option of exchanging preferred stock, which is now limited in its right to dividends, for common stock; *third,* the elimination of four subsidiary companies which conduct a substantial part of the business of the company by placing the ownership of these companies in a single corporation, simplifying the accounts and reducing some expenses that are now duplicated.

This plan contemplates (among other things) the transfer

or sale of all the property and assets of the company (subject to its indebtedness) to a company of the same name organized under the laws of Massachusetts. This company has been in fact organized, and by exchange of its stock (on the basis set out in the circular) for stock of the New Jersey company has now become the owner of nearly all the common stock of the New Jersey company—seven thousand two hundred and forty-three shares out of seven thousand five hundred, and of five thousand one hundred and four shares out of five thousand five hundred and twenty-seven of the preferred stock. Complainants together own one hundred and twenty shares of the common stock.

The statutory notice of the meeting sets out a copy of the resolution for dissolution and notifies stockholders that the special meeting will be held for the following purposes:

*First.* To take such action as the stockholders may deem desirable upon the aforesaid resolution of the board of directors relative to the dissolution of the company.

*Second.* To take such action as the stockholders may deem advisable with reference to authorizing the sale of all the property and assets of the company, and, in case such sale is authorized, to fix the terms and conditions thereof.

The meeting has been adjourned from time to time, and, pending the adjournments, applications for preliminary injunctions have been made in the above causes.

In the *first* case, in which both the Riker company and the Jaynes company are complainants, an injunction is sought against action on the first resolution for dissolution, while in the *second* case, in which the Riker company is the sole complainant, an injunction is sought against the proposed transfer of the property and assets to the Massachusetts company.

While the applications were not argued together, they both involve to a large extent a consideration of the same affidavits, and by agreement of counsel the affidavits filed by defendant in the *second* case, which was first argued, were used on the application in the *first* case.

My conclusions on both applications will be stated together and briefly, leaving a fuller statement and opinion to be filed hereafter if desired.

The meeting for the purpose of acting upon the *first* resolution, relative to dissolution, has been duly called, and the power and right is expressly given by the statute to the stockholders to take action on such resolution and consent to the dissolution by a two-thirds vote and consent in writing. The stockholders at this meeting act not as trustees for each other, but individually, and have the right to vote as their views of their individual interests may dictate, subject to the qualification hereafter stated.

The New Jersey cases, settling the nature of the rights of stockholders at stockholders' meeting, are referred to in some cases that have been before me, especially the *Colgate Case, 73 N. J. Eq. (3 Buch.) 72*, which was a case of consolidation and merger, and the *Bijur Case, 74 N. J. Eq. (4 Buch.) 546*, a case of dissolution. The latter case is now pending before the court of errors and appeals, and it is possible some qualifications of the rights as previously declared may be made. This right to take action on the resolution for dissolution is conferred by statute in express terms, without any express terms of qualification. It is contended on the part of the complainants that there are provisions in the statutes relating to corporations which have the effect of qualifying this right. These provisions are those defining the effect of dissolution and directing the proceedings that are to be taken for winding up on dissolution. It is contended that those have the effect of qualifying this power, and that on a proposed dissolution the court may examine whether, in reference to the steps intended to be taken, they are such as are directed or intended by the statute, and, if not, may enjoin the entire proceedings for dissolution, including a vote on the resolution. I think that is a wrong view of the effect of those provisions. Those provisions are effective, but they are not effective by way of qualifying the right to dissolution. They are effective by way of preventing any plan being carried out subsequent to the dissolution which is not in compliance with the terms of the statute, but the court should not undertake in advance to say that the right to vote on the question of dissolution must be taken away, for the reason that in voting on this question they do so with the motive, or the object, of carrying out certain plans which would be in violation of the statute re-

lating to proceedings after dissolution. For if the plans are violations of the statute, they cannot be carried out after dissolution, and the stockholders, in voting to dissolve, take that risk of their being carried out.

I conclude, therefore, that these other provisions of the Corporation act, relating to the effect of dissolution and the proceedings on dissolution, have not the effect of qualifying the right or power of a stockholder to vote on the resolution for dissolution. It is undoubtedly true that the dissolution could not be used by the majority for the purpose of commiting a fraud on the minority stockholders, but in the absence of fraud, or acts beyond their lawful powers as stockholders, the minority have, as I think, no standing to enjoin the exercise of this right conferred by statute on the majority stockholders.

The complainants in both cases stand on their general rights as stockholders, and in the *first* case stand also on a special right given, or claimed to be given, to stockholders as to the purchase of the products of the company under a by-law of the company. A dispute having arisen between the complainants in the first suit and the defendant, as to the right of the company to fix certain conditions before complainants could have the benefit of this by-law, a preliminary injunction was granted on the original bill in this case, enjoining the company from refusing to furnish goods to the complainants on the same conditions that they furnished other stockholders. But I think the injunction given by that suit does not at all affect the right which the company may have pending the suit to proceed to dissolve. So long as the company continues to exist they must furnish to the complainants goods on the same terms that they do to other stockholders, but I do not think that the injunction obtained in that case gives any additional standing in this case to the complainants on their supplemental bill for the protection against the passage of a vote for dissolution, beyond what they would have as an ordinary stockholder. The circumstance that one motive or reason for the dissolution of the company may be a termination of rights given by a by-law of the company to the stockholders, does not of itself make the proceedings for dissolution a fraud on the minority stockholders. It is often found in the organization

of companies that provisions are adopted either by way of express contracts in the stock itself, or in the by-laws, that operate in a way far different from what the promoters or original organizers of the company expected, and in many cases it is a matter of pure business reason and judgment, not at all involving any question of fraud, whether the company should consider the advisability in a business point of view of taking into account in the dissolution of the company the termination of contracts, leaving the assets of the company subject to any liability therefor. In the *Bijur Case*, as I recall it, one of the reasons mostly relied on for a dissolution of one of the companies was that in its original charter, or contracts made under it, there had been provisions for contracts of such an onerous character that, if carried out, it eventually must injure the business of the company materially. So far, therefore, as it is a business reason, the stockholders have a right to consider the effect of the by-laws and its continuance. The circular does not state expressly that the termination of this by-law is one of the objects of the plan of reorganization, but I think, in view of the fact that the Massachusetts company is organized on a plan by which the by-law is omitted, the complainants, as well as the defendant in this case, are entitled to consider the elimination of this by-law as one change in the status of the company in the reorganization of its affairs proposed. My view in reference to the right to terminate rights conferred by a by-law is that the by-law, considered merely as such, is made subject to determination by dissolution of the company under the laws that were in force at its adoption.

The fact that the dissolution is recommended by the directors, or may be intended by the majority stockholders in giving consent to it, as one step in a proceeding to reorganize the financial and business affairs of the company, does not of itself make the proceedings either fraudulent or colorable under the statute.

On the affidavits in this case as presented to me, it cannot be said that they disclose merely a colorable dissolution or plan of reorganization. The principal results to be accomplished are substantially set out in that circular; the provision for additional capital, temporary and permanent, contemplates the pay-

ment into the treasury of the Massachusetts company of $275,000 in cash, and it also contemplates the creation of a fund of securities of $2,225,000 of preferred stock as a basis for procuring capital in the future, when it is considered advisable to do so. They are substantial changes in the financial organization of the company and not merely colorable.

I have read over the correspondence between the complainants and the defendant which took place soon after the resolution had been passed by the directors and the circular sent out, and in that correspondence there is no complaint that the scope of this plan is merely colorable and that there are no advantages to be gained to the company for reorganization of its affairs on that basis. The dispute between the parties arose on what should be the adjustment between them in reference to the continuance of complainants' business with the Massachusetts company, but I do not find any suggestion anywhere that these are not really substantial matters, fairly to be considered by the stockholders as a matter of business judgment, in voting for a dissolution of the company as one step in the proceedings. In doing so, the risk of its legality is taken. In other words, if a plan of this kind should be carried through, as it now strikes me, it cannot be said to involve so little change from the present condition of the company as to its financial affairs, that the court can say the whole proceeding for dissolution is merely colorable, and should be enjoined at the outset by preventing its submission to the stockholders.

Whether, after dissolution, the further steps of this proposed plan can be carried out, or whether if dissolution takes place, the plan proposed, either in its entirety or substantially, and with the omission of some of its terms, can be carried out, under the statute, except by the consent of all who are stockholders at the time of the dissolution, is a matter which is premature to consider. What is now decided is, that these statutory directions as to the effect of dissolution and the proceedings subsequent thereto, are not limitations of the power to dissolve, and that so far nothing has been shown which will disentitle the stockholders to exercise the right conferred on them by the statute, of consenting to the dissolution of the company. This is the limit of

the right at this special statutory meeting, and in exercising their right to consent at this meeting, no further or other powers of stockholders in reference to the dissolution should be exercised.

*Second.* The status of the company on such dissolution as to the settlement of its affairs and its winding up, are all matters of express statutory provisions. *Corporation Act,* § 5, *"Winding Up"* §§ 53-60. Under these provisions, the directors at the time of dissolution become statutory trustees, with special powers and subject to special duties, as to which the vote, consent or advice of those who were stockholders at the time the dissolution goes into effect, or afterwards become stockholders, or may succeed to the interests of stockholders, may be entitled to consideration in deciding upon their duty as trustees. But the direction in advance is beyond the scope of the stockholders' meeting, especially when, as in this case, the plan is substantially that of approving the terms on which it is proposed that the entire assets upon dissolution shall be conveyed to the majority stockholder itself. Such action before dissolution is admittedly beyond the powers of the company, and it must be held, I think, that it is beyond the powers of the company, either to call a meeting of stockholders for this purpose, or to vote on such proposition, against the consent of any stockholder of the company.

The *second* resolution expressly contemplates an authorization of the sale of all the property and assets of the company and if authorized, the fixing of the terms and conditions thereof. It is not in terms confined to a sale after dissolution, and if it were, decision upon or discussion of the plan proposed or its details should not be anticipated or embarrassed by present action of the stockholders. Neither should the minority stockholder nor the court be required to decide in advance as to the competency of this plan of the right to make objections to any special feature, if this should be the plan finally adopted.

The case of *Theis* v. *Spokane Falls Gas Light Co.* (*Washington Supreme Court, 1904*), *74 Pac. Rep. 1004*), which has been so much referred to, was a case of precisely that character. There was no vote for dissolution; nor any proceeding for dissolution, and the court in its opinion said that if there had been a proceeding for dissolution the court would have been required

to act on it under the statute. In that case there was a meeting of the stockholders authorizing a sale of the entire assets, the intention of the majority stockholders being to purchase it themselves. That was a proceeding exactly like this second resolution, authorizing a sale of all the property of the company. The court below declined to enjoin the sale; the sale was carried out pending the appeal. The court on the appeal said that the sale should have been enjoined, and the circumstances that developed on the sale and afterwards, showed that the sale contemplated was a sale to the majority stockholders which voted for the sale, and therefore it could not be called a dissolution under the statute, and the proceeding under it was enjoined.

I conclude, therefore, that although the stockholders have the right to proceed to vote on the first resolution relating to dissolution, exercising that right in view of what they deem to be their individual interests, they have no right now in advance of the dissolution, either by way of advice or consent or estoppel, or any course, to embarrass, hinder or affect the statutory power and duty of the trustees on dissolution to perform their duties under the statute, and an injunction will be granted against proceedings on the second resolution. As questions are here involved which the defendant as well as the complainants may desire to have reviewed on appeal in order that the whole status of the powers of stockholders on these dissolution proceedings may be settled, I will, if either party desires, on the signing of the orders and the filing of appeals, consider an application for a stay pending appeal.