E. W. ENDERLIEN, W. R. Foster, and C. A. Wiley, Copartners Doing Business under the Firm Name and Style of The Minot Plumbing & Heating Company, v. KARI KULAAS.

(141 N. W. 511.)

**Appeal — dismissal — title of action — identity of judgment.**

1. An appeal will not be dismissed on the ground that the title of the action in which it is taken is imperfectly stated, when the body of the notice contains matter sufficiently identifying the judgment from which the appeal is taken.

**Appeal — undertaking — amendment.**

2. Following Burger v. Sinclair, 24 N. D. 326, 140 N. W. 235, appellant is permitted to furnish an amended or substituted undertaking on appeal for the original, which was imperfect.

**Order for judgment — reviewable appeal from judgment.**

3. An order for judgment is reviewable on appeal from the judgment.

**County court — appeal from — contract — abandonment of — evidence — findings — motion — error.**

4. This action was tried in county court having increased jurisdiction, and in special findings the jury found that the defendant owed plaintiff $85.67, and that a certain contract on which this action is brought had been mutually abandoned by the parties thereto. The court directed judgment notwithstanding the verdict, for the full amount sued upon. *Held,* that the correctness of this judgment depends upon the record containing evidence to support the finding that the contract had been abandoned, and cannot stand if evidence is found in the record to support it. *Held,* further, that the record contains sufficient evidence on the question to sustain the finding that the contract was mutually abandoned, and that, therefore, the granting of the motion constituted error.

**Damages — breach of contract — testimony — jury — error.**

5. In an action for damages claimed to have been occasioned by the breach of

---

Note.—Upon the question of parol evidence to prove abandonment of contract, see note in 56 Am. St. Rep. 672.

25 N. D.—25.

a contract, an admission of testimony tending to aid the jury in arriving at the measure of such damages, if any, does not constitute error.

Opinion filed March 29, 1913. On petition for rehearing May 21, 1913.

Appeal from a judgment and order of the County Court having increased jurisdiction, for Ward County, *Davis,* J.

Reversed.

Statement by Spalding, Ch. J.   This action is one to recover $210.67 on two causes of action: First, for material and labor furnished in the performance of work under a contract for plumbing, etc., $85.67; the second, for $125, the amount of profit claimed by plaintiffs to have been lost because defendant refused to permit them to fully perform the contract.   The contract consists in the written proposal of the plaintiffs and the conceded verbal acceptance, the entire job to be done for $720.   The contract provided for the construction of plumbing, etc., in two residences belonging to defendant, situated on Fourth street, in the city of Minot, facing north.   Connection with the water main and sewer had to be made by going east to Ramstad street. After the contract had been entered into the city constructed a sewer and water main in front of the residences of defendant, along Fourth street, which enabled her to make connections by going directly north from each of her houses, making 57 feet less trench to dig than was contemplated by the contract.   Plaintiffs entered upon the execution of the contract, and their laborers were ordered to quit by the defendant, after having done work and furnished materials of the value alleged in the first cause of action.   When defendant found that the connections could be made on Fourth street, she saw plaintiffs and demanded a change in the contract, to fit the changed conditions, and, as we have said, refused to let them proceed without it.   They offered to make her an allowance of $75, while she insisted upon a deduction of $150.   No further work was done, and this suit was brought.   The litigation hinges around the question as to whether the original contract was abandoned, or whether it still remained in force because they failed to agree on new terms.

Special findings were made by the jury, and a general verdict rendered.   The special findings were that the parties entered into a con-

tract to do the work and furnish the materials for the agreed price of $720; that such contract was abandoned by mutual consent of all the parties, on the 25th day of August, 1910; that the reasonable profit on the contract, if the plaintiff had been allowed to complete it according to its terms, would have been $100. The general verdict was for $85.67. At the close of the case, plaintiffs made a motion for the court to instruct the jury to return a verdict in their favor as prayed for in the complaint, on the grounds that the plaintiffs had fully proved their case, and that no defense whatever had been put in nor any evidence introduced by the defendant which would warrant any other verdict. An order was entered, granting this motion and directing the entry of judgment accordingly. This appeal was perfected. The court, in its order, stated that the motion was granted, in substance, on the ground that no evidence of any kind was introduced showing that the contract had been modified, changed, abandoned, or another one made in its stead; that the evidence offered by plaintiffs showed damages as alleged in their complaint, and no evidence was introduced by defendant changing or mitigating said damages; and also because the defendant had admitted, in her answer, liability for the work and labor actually performed; and that there was nothing on which to base the finding of the jury that the contract had been abandoned by mutual consent. At the proper time respondent submitted a motion to dismiss the appeal, the ground of which will be stated in our opinion.

*Palda, Aaker, & Greene,* Minot, for appellant.
*F. B. Lambert,* Minot, for respondent.

SPALDING, Ch. J. 1. The notice of appeal is entitled, "E. W. Enderlien, plaintiff, v. Kari Kulaas, defendant," and it is claimed that this defective designation of the plaintiffs renders the notice invalid for all purposes. Enderlien was one of the copartners in the plaintiff firm. The notice in all other respects sufficiently described the action in which the appeal was taken to identify it, and we think this was sufficient. The respondent could have been misled in no manner by which the defective designation of the plaintiffs.

2. The same defect and others appear in the undertaking on appeal, but appellant made application in this court for leave to substitute a

new and correct undertaking, and under the decision in Burger v. Sinclair, 24 N. D. 326, 140 N. W. 235, we must allow this new undertaking to be filed in place of the original.

3. The notice of appeal reads that it is taken from the judgment rendered in the action on the 22d day of December, 1910, and from the order of the court dated the 21st day of December, 1910, whereby judgment was given in favor of the plaintiff and against the defendant, etc. And it is alleged by respondent that the order is not appealable, and that the appeal is duplicitous. There is nothing in this contention. The order is reviewable on an appeal from the judgment, and is not an appealable one, and the notice amounts to an appeal from the judgment only.

4. The answer of defendant admits her indebtedness to the extent of $85.67, and offers judgment for that amount. The main question to be considered is whether there is any evidence in the record to sustain the finding of the jury that the contract was mutually abandoned. The evidence is set out at considerable length, and it would serve no useful purpose to review it in full; but we think there is sufficient evidence of the abandonment of the contract by the parties to sustain the finding, and that for this reason the judgment notwithstanding the verdict, for a greater amount than the verdict, was erroneous. The defendant testifies that she directed the workmen to cease working on the job, after learning of the new sewer and watermain, and that she called repeatedly to see the plaintiffs on the subject of a new contract, and that they were unable to get together on any change; and she testifies that one of the firm agreed with her suggestions that the old contract was not any good, and said he would make out a new contract, but that when she saw him he did not have time to do it; and that she did not have time to wait for them longer, and got somebody else to do the job. She testified expressly that she asked him to write out a new contract; that when she asked for a new contract he was so busy all the time that he could not make it; that she was there pretty near every day for a week; that she told them that she wanted to know how much she had to pay, because their contract was out of the way; that she asked for the bill four times, and that on the fourth occasion he told her, "You will get that some day;" that she never got a bill from him, and the first thing she knew of the amount was when the suit was brought; that

he offered to throw off $75, which she declined to accept; that he told her he would return another contract.

Plaintiffs admitted, in their testimony, that she told them that she did not want them to continue the work, and told them to discontinue it, and that they did discontinue it, and that possibly she told them to stop any further work until they "had made an agreement as to what she was going to pay us for the job;" and one of the plaintiffs testified, on direct examination, that they did not have an agreement with her after they abandoned that contract. We think this is sufficient to sustain the finding of the jury. Of course there was evidence more or less in conflict with this; and it is possible that, if we were to find the facts on the whole record, we should not make the findings made by the jury; but that is not the criterion in this case. The question is whether there was evidence to sustain their findings, and from the tenor of the testimony as a whole we think the jury might properly have found that the plaintiffs gave her to understand, or permitted her to understand, that they did not expect to proceed with the work unless a new contract was entered into, or a modification made of the old one.

5. Error is assigned on the overruling and sustaining of certain objections to questions propounded witnesses, all relating to the subject of the cost of completing the job as contracted for and the profit on it, and as to the difference in distances, etc. They all were intended to aid the jury in arriving at the measure of damages under the second cause of action set out in the complaint, and we think the rulings of the court in each instance were correct. Such evidence was admissible under the complaint, and the one question to which an objection was sustained called for a reason of the witness, and if erroneous was not of sufficient importance to notice.

The order of the trial court was erroneous, and the judgment is reversed; and that court is directed to enter a judgment in accordance with the verdict. Respondents will recover costs in the lower court to the time when the answer was served; appellant will recover her costs on all subsequent proceedings.

On Petition for Rehearing.

SPALDING, Ch. J. We are confronted with a petition for rehearing

in which the plaintiff makes very emphatic assertions and a most strenuous appeal to the court to recede from its decision.  We appreciate the fact that defeated counsel, particularly when he acts for the plaintiff and litigation is instituted in reliance on his advice, may feel disappointment and even chagrin at defeat, but the judgment of counsel is not infallible any more than that of a court.  There must be some final arbiter on litigated questions, and this court has been created to serve in that capacity.  Its judgment may be no more enlightened or sound than that of the counsel in any case, but, whether its conclusions are right or wrong, it is the duty of its members to exercise their own judgment, after all necessary investigation and consideration of the arguments and authorities presented by counsel, and to pronounce such judgment in accordance with its most intelligent convictions.  Counsel for plaintiff in any case brings his action upon the facts as stated to him by his client.  When the action is brought, counsel seldom knows what testimony the defense may offer.  The evidence submitted by the defendant may often surprise counsel for plaintiff and the result disappoint him, but courts must take into consideration both the case and the defense.  We feel that counsel is a little hypercritical in his criticisms of the opinion.  For instance, he criticizes it because therein it is stated that the houses in which the work was being done faced north.  It is wholly immaterial which way they faced, but the court construed a plat contained in the abstract as showing that they faced north.  We, however, accept counsel's statement that they face east.  The only object in referring to the direction was to make the situation clear to the reader.  We cannot restrain the feeling that counsel's petition would be more properly addressed to this court in a suit in equity wherein the issues are tried *de novo*.  He seems to assume that we are to review the evidence and find the facts.

Certain principles are so elementary in the consideration of motions for a directed verdict and for judgment *non obstante veredicto* that we did not deem it necessary to call attention to them in the original opinion.  Among them this will be recognized, that in such consideration the evidence must be construed most strongly against the party in whose favor the verdict or judgment is directed, or, as some courts put it, the testimony of the opposite party must be taken as true.  When this rule is applied to the instant case we only have to determine whether there

is substantial evidence to sustain the verdict returned by the jury. And we still hold to the belief that, while there is a conflict in the evidence, there is substantial evidence, or enough evidence, to sustain the verdict. We do not say that if we were sitting on this case as jurors we should find the same facts that the trial jury found. Without having seen the witnesses or heard them testify, we are disposed to think that we should find the contrary, but that is neither here nor there. It was the province of the jury to pass upon the facts, so long as a conflict existed.

It is also elementary that parties could, by mutual agreement, abandon a contract before it was performed, or after partial performance. Of course, when partially performed the contractor may recover for the work done, in the absence of an agreement to the contrary. It is equally elementary that parties, by their actions or by their failure to act or by their silence, may lend their assent to a proposition of another and thereby abrogate a contract or the unperformed part. 2 Parsons, Contr. 678. In the case at bar it is a matter of indifference whether there was an express agreement that the contract be abandoned, or the plaintiffs, by their conduct and their silence, assented to the statement made to them by defendant that the contract was abrogated, or words to that effect, and with knowledge that she intended to have the job completed by others, as she told them, permitted her to incur new obligations without making known to her that they intended to hold her to their original contract. It is equally immaterial whether it was a question of a total abandonment of the contract, or an agreement that, in its original form, it was abandoned, that they might thereafter agree on a new contract changing the old one in certain respects; namely, the place of connecting with the sewer and waterworks and the amount of the consideration to be paid. If it was the former, that ended it; if it was the latter, the original contract was in effect abandoned, and no agreement reached as to the terms of a new one. The result is the same in either case. On the question of consideration, see 1 Page on Contracts, § 317. Cases in which a recovery for work done was contested are not in point. The mutual agreement of the parties constitutes the consideration. We do not consider it important what the reason for the silence of plaintiffs was when approached on numerous

occasions with reference to a new agreement, and when requested to furnish a statement of the value of the work done and materials already furnished. It is disclosed by the evidence submitted by both parties that they were in fact silent; that when the defendant told one of the plaintiff firm that they should proceed no farther on the contract, and that she would get another party to do it, they in no manner gave her to understand that they expected to stand upon their contract, or that they did not accede to her statements. She visited them repeatedly, but they were always too busy to give her a statement, and never agreed on the new consideration for the work. It may be added that there never was a formal contract reduced to writing. The plaintiff submitted specifications stating the price at which they would do the work. The defendant orally accepted their offer at a reduced price, so the only writing between the parties and governing them originally was the specifications. Malone v. Philadelphia & R. R. Co. 157 Pa. 430, 27 Atl. 756; Adams v. Boston Iron Co. 10 Gray, 495.

In addition to extracts of the evidence set out in our original opinion, we give the following excerpts:

Mrs. Kulaas testified:

"I met Mr. Enderlien first, and I talked to him about that and he said he didn't know, but would make out the papers; and I went in to Mr. Wiley, and he said he would make it out; that he didn't have any time; and I went in there every day for a week for to make up the contract, and he promised to make up the contract every day."

"I went down to Mr. Wiley and saw him about it, and he told me he would return another contract."

"It was after that I had a talk with Mr. Wiley about this change in the contract, and he promised another one. I went down, and he said he didn't have any time to make out the contract, and I went down there a week, every second day through a week, and he said the same, —he didn't have time to write out a contract; and the last time I was down there and he say I got a letter down to the postoffice and that letter told all about it. After I got that letter I went in and told (asked) them how much my bill was. I want to pay them, and he told me he would fix me. After that I went in four times and asked for the bill. I was there four times, and he said, the fourth time, 'Oh, you will get

that some days.' I never got a bill from him." "The first I knew what the amount was they was going to charge me was when they sued me."

"Three or four times I talked about it, and he promised the contract, and he didn't have time every time I come down and wanted to see how much he wanted, and he didn't have time to make it out, and he had the work done, and I had to have the work done because I had the carpenters at home and the work had to be done."

"He didn't say, 'no,' and he didn't say, 'yes,' and I went and asked him for a new contract, and he promised to write one, and he all the time was so busy, and he couldn't do it. I went in every day, pretty near a week. I was in many times after the contract, after the city put in the sewer,— that is what I mean.

"I told him the first contract wasn't any good, and it isn't. . . . I told him the contract wasn't any good,—it doesn't make any difference then. He agreed with me the first contract wasn't any good. . . . As to what the other contract was we never agreed. . . . Then I went and got somebody else to get the job, because I couldn't wait for them. They didn't have time to do the work.

"Before I let the contract to somebody else, and after I had got that letter, I went down and asked him how much the bill was, and told him I was ready to pay. I was there many times, and wanted to know what my bill was."

One of the plaintiffs testified:

"We didn't make any agreement as to what the difference in price should be, but we did agree there was going to be a change from the original contract if they run the city sewer by there. They did run the city sewer by there."

"We never submitted any figure that would reduce the price, and she didn't say anything to us in regard to it, only she wanted to figure, and I told her we would give her a figure, and we was busy and didn't do it."

Another plaintiff testified:

"She may have said something to the effect that we were not to do anything until we had agreed about what she was going to pay us. I don't remember her exact statement."

"She hinted that she was going to get other bids."

A rehearing is denied.