**UNIVERSAL TOWING COMPANY,
Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY, 112 No. 4th St., Pierce Bldg., St. Louis, Mo., Defendant.**

**No. 68 C 170(3).**

United States District Court
E. D. Missouri, E. D.

Jan. 27, 1969.

D. Sherman Cox, St. Louis, Mo., for plaintiff.

Evans & Dixon, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

Plaintiff, a party defendant in an admiralty action pending before another judge in this district, seeks a declaratory judgment respecting the coverage of a policy of insurance issued to plaintiff by defendant and the obligation of defendant to defend said action.

The policy in question, No. 98 OM 301435, dated as of October 10, 1964, and effective for one year, was a "new" policy insofar as defendant was concerned, prior insurance having been written by a different company through a different insurance agency. The geographical scope of the policy was "the entire Mississippi system * * *". Various types of insurance coverage were provided for. The type here in issue is "terminal liability." As to this coverage, the policy provided, in part:

1. The company agrees with the named Insured to pay on behalf of the Insured all sums the Insured shall become legally obligated to pay as damages by reason of the liability imposed by law upon the Insured for loss of or damage to the following described property, including the loss of use thereof, while at their terminal(s) at the locations described in Item 5 of the Declarations.

a. Barges while in the care and custody of the Insured.

\* \* \* \* \* \*

c. Damage by said barges to property of others wherever located.

2. This policy does not apply to liability assumed by the insured under any contract or agreement, unless such liability would have been imposed by law in the absence of such assumption in the contract or agreement.

3. This policy applies only to occurrences during the time it is in force and which take place at the Insured's Terminal(s) listed in Item 5 of the Declarations.

\* \* \* \* \* \*

6. With respect to such insurance as is afforded by this policy, the Company shall:

a. defend any suit against the Insured alleging such loss or damage and seeking damages on account thereof, even if such suit is groundless, false or fraudulent \* \* \*."

Item 5 of the Declarations did not list any of plaintiff's terminals. It is this failure which has given rise to the instant litigation.

Prior to the issuance of the policy as well as during its effective period, plaintiff operated four fleets of barges at three terminal locations which it owned. In addition, it serviced under contract an anchor fleet owned and operated by Upper Mississippi Towing Corporation at the latter's terminal located at Mile 177.7 on the Mississippi River. Included in the functions performed by plaintiff on a daily basis pursuant to this contract was setting out lights and checking the security of the Upper Mississippi Towing fleet (that is, seeing that the latter's barges were properly and adequately tied) and from time to time, as ordered by Upper Mississippi Towing, plaintiff would also take the latter's barges in and out of its fleet for a stipulated charge.

On March 12, 1965, two of the barges in the Upper Mississippi Towing fleet allegedly broke away from its terminal facility at Mile 177.7, floated downstream, and damaged property of Mobil Oil Corporation. In September, 1967, Mobil Oil filed suit, Cause No. 67A312 (1), against Upper Mississippi Towing, Universal (the present plaintiff), and two other defendants to recover damages resulting from said incident. In its complaint, Mobil Oil alleged that the terminal facility at Mile 177.7 was "operated" by Upper Mississippi Towing and "maintained" by Universal and that the barges in question were then and theretofore "in the care custody and control" of both Upper Mississippi Towing and Universal. Negligence charged against Universal included, inter alia, its alleged failure to properly secure the barges and the alleged inadequacy and unseaworthiness of the mooring and securing lines. In its answer Universal denied that it "maintained" the facility, as well as the allegation that the barges had been placed in its "care, custody and control." Upper Mississippi Towing filed a cross-claim against Universal which made essentially the same allegations of negligence against Universal.

 Missouri law governs. The applicable rule in this state is that insurance policies are to be construed by the same general rules as govern the construction of other written contracts. Central Sur. & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76. The contract is to be construed as a whole, and if possible every clause thereof given some meaning. Of course, if the policy is reasonably open to different constructions that most favorable to insured must prevail. However, this principle does not authorize the Court to remake the contract. Our duty is to ascertain and give effect to the intention of the parties as disclosed by the contract they have made. State Mut. Life Assur. Co. of Worcester v. Dischinger, Mo., 263 S.W.2d 394, 402.

The parties are in agreement that Hartford's failure to list *any* of the terminals in Item 5 of the Declarations does not have the effect of affording *no* terminal coverage at all. Normally, the

purpose of listing the terminals would be to limit the coverage of the policy to some but not all of an insured's terminals. Here, however, there can be no doubt that both parties intended that the policy provide coverage at all of *Universal's* terminals.

■ In the circumstances of this case, the policy is to be read as though none of the references to Item 5 of the Declarations appeared therein. So read, the policy expressly limits its application *"only* to occurrences * * * which take place at the *Insured's* Terminal(s)." And (insofar as this case is concerned) the coverage at such terminals is limited further to claims for damages caused either to or by barges in the care and custody of the insured.

What then are the "insured's terminals" within the meaning of the policy language? That is the decisive issue as we see it. As stated, it is our function and duty to ascertain the intention of the parties in employing the language used in the contract. Universal has never claimed that the terminal at Mile 177.7 is in fact one of its terminals, nor does it claim that it maintained or operated that terminal. And insofar as Hartford is concerned, it was never informed nor acted under the belief (certainly not prior to the issuance of the policy) that the facility at Mile 177.7 was one of Universal's terminals—and this is true even though it may have been informed that some of Universal's operations included providing certain services under contract at that terminal. So, too, Universal has consistently taken the position that at no time since it disposed of a fleet it formerly operated at that terminal have any of the barges at the Mile 177.7 facility been in its care and custody.

There is evidence on behalf of plaintiff to the effect that its representatives fully "explained" to J. B. Andrews, Jr., and another insurance broker associated with the Lawton-Byrne-Bruner Insurance Agency, while negotiations for the issuance of the policy were progressing, the nature of its contractual services for Up-

per Mississippi Towing. Lawton-Byrne-Bruner is an insurance agency which represents a number of insurance companies, including Hartford. Acting as broker for its customers, it places insurance as it sees fit. For example, some of Universal's business (its automobile insurance) was placed with a company other than Hartford. Universal was not informed that its broker intended to ask Hartford to cover the marine risks. In view of our disposition of this case, we need not decide whether Hartford, which had no actual knowledge of Universal's operations at Mile 177.7 terminal, is bound by the knowledge and representations of Andrews.

Whatever the "explanation" to Andrews may have been (and the testimony does not advise us as to its specifics other than in general outline) and whatever knowledge thereof may be imputed to Hartford, the clear inference from the testimony is that no representations were made nor facts stated by Universal's representatives which would indicate either that the terminal at Mile 177.7 was maintained or operated by Universal or that any of the barges at that terminal were or would be under Universal's care and custody.

The actions of the parties further demonstrate their intent with respect to the meaning of the term "Insured's Terminals". The policy made it a *condition* of the insurance that Universal keep a complete and accurate record of all barges in its care and custody "at the terminal(s) listed in Paragraph 1", for the purpose of reporting and paying the premium, which was based on the total number of barge days, at the stipulated rate.

Construing the words "at the terminal(s) listed in Paragraph 1" to have the same meaning as the "insured's terminals", as is undoubtedly its intended meaning, the effect of the foregoing "condition" was to obligate Universal to record each barge in its care and custody at each of "insured's terminals" and thereafter make a monthly report and pay a premium based on the number of

such barges each day at Universal's terminals. Admittedly Universal made a record only of all barges which were at the three terminals it admittedly operated and maintained, and in its required monthly report listed only the barge days based on the number of barges at *such* terminals, and on that basis paid the premium for the terminal insurance. At no time did Universal make any report with respect to barge days at the Mile 177.7 terminal and no premium was ever paid for any barge days at such terminal.

Assuming, as we must, that the "explanation" which was made to Mr. Andrews was factually in accord with Universal's actions, it is apparent that whatever else plaintiff might have intended, it could not have intended that Hartford consider that the terminal at Mile 177.7 was one of the *insured's* terminals as that term was used in the terminal liability policy, and quite obviously Hartford did not so consider it at any time. If in fact the terminal at Mile 177.7 was maintained by Universal, then obviously Universal did not either adequately or correctly explain its operations to Lawton-Byrne-Bruner, inasmuch as the actual explanation, if true, demonstrates that Universal neither maintained the facility nor believed that it was one of its terminals. It is not without significance that the prior policy (with another company) which listed only the terminals other than the one at Mile 177.7 was turned over to Hartford for its information prior to the time the policy was written. Plaintiff argues that since the policy states it is a "new" policy rather than a renewal, this fact in some way gives plaintiff added rights. Obviously, the policy could not have been a renewal since Hartford had never previously provided such coverage for plaintiff. Nevertheless, it wrote the "new" policy on the assumption the terminals covered were those which were covered by the prior policy.

Confirming Universal's intent as to the meaning of the term "Insured's Terminals" are the answers that were filed in the Mobil Oil suit. Therein, Universal explicitly denied not only the allegations that it maintained the terminal facility in question but also that the barges which allegedly broke away were in Universal's "care and custody". Plaintiff attempts to justify its inconsistent position by arguing that it was compelled to set up all defenses in the answer. However, we are aware of no obligation upon a litigant to assert an untruth.

■ Plaintiff urges that since the policy obligates Hartford to defend any suit alleging "such loss or damage and seeking damages on account thereof, even if such suit is groundless, false or fraudulent", Hartford is required thereby to defend the Mobil Oil action without regard to the truth of the allegation that the facility at Mile 177.7 is a Universal terminal. Under the circumstances of this case, we do not agree. The policy, as written, protects and is intended to protect plaintiff only with respect to its operations at the insured's (*Universal's*) terminals. The parties (both Universal and Hartford) knew at the time the policy was written which terminals were in fact Universal's and those terminals are the only ones which the policy covers. Simply because a third party (Mobil Oil, or even Upper Mississippi Towing) has alleged in a suit that *another* terminal was also maintained by Universal does not operate to broaden the coverage of the policy to include that other terminal contrary to the intention of the parties to the insurance contract. The policy provision in question pertains only to suits alleging a loss or damage at one of the *insured's* terminals (those which were intended to be covered) and alleging even falsely or fraudulently that the damages claimed were caused by a barge which was in the care and custody of Universal at *such* terminal.

Plaintiff argues at some length that in discussions held with Mr. Andrews of Lawton-Byrne-Bruner Insurance Agency preceding the issuance of the policy by Hartford, plaintiff's representatives requested coverage for its entire operations and that Andrews assured them

that the policy when issued would cover all such operations including any liability which might result from the services provided Upper Mississippi Towing under the contract, as those services were "explained" to him. A number of types of coverage, e. g., tower's liability, cargo, hull, and protection and indemnity, in addition to terminal liability were provided for in the blanket policy as issued. All of these are specific types of coverage, for each of which a specific rate of premium was to be paid by Universal. Terminal liability insurance may not be equated with comprehensive liability insurance, as even a careful reading of the language thereof makes abundantly clear. We note that the Board Chairman of Universal testified that he reviewed the policies when they were delivered. He accepted them without any protest. If Andrews agreed to provide additional insurance protection which the Hartford policy does not afford Universal, and he failed to do so, any such breach of agreement on his part cannot change the plain meaning of the policy which was actually issued.

■ The facility at Mile 177.7 is not, and never was, within the contemplation of the parties to the insurance contract, one of *Universal's* terminals. Any claim which plaintiff may have based upon the alleged agreement to provide full coverage for all of plaintiff's operations must be asserted, if at all, in a claim for breach of contract or for negligence based upon breach of duty of an insurance broker and not in this declaratory judgment proceeding to determine the rights of the parties under the terms of the policy which was issued.

It follows that the policy does not afford coverage with respect to the occurrence alleged in the Mobil Oil action and that defendant is not obligated to defend said action.

The foregoing memorandum opinion constitutes our findings of fact and conclusions of law. A declaratory judgment will be entered in conformity with this memorandum opinion.