**ALLIED MUTUAL INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Lloyd L. HINGST, Jr., Defendant.**

**Civ. No. 4753.**

United States District Court,
D. North Dakota,
Southeastern Division.

July 30, 1973.

Edward C. Gillig, Vaaler, Gillig, War-cup, Woutat & Zimney, Grand Forks, N. D., for plaintiff.

Kenneth A. Olson, Lanier, Knox & Olson, Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION

BENSON, Chief Judge.

This is a declaratory judgment action commenced by Allied Mutual Insurance Company against its insured, Lloyd L. Hingst, Jr., seeking a determination of its rights and liabilities under an insurance contract between the Plaintiff and Defendant, specifically Policy No. GA63380. The action was commenced as a direct result of a claim made by Marlo R. Tveter for injuries allegedly sustained on July 25, 1970, on the farm of Donald Klosterman and Leo Klosterman, while in the employ of Vernon Brosowski (Civil No. 4634, pending in this Court). Tveter alleges negligence on the part of Klostermans and R.S.R. Electric Cooperative, Inc., in causing a metal building to be constructed in close proximity to an overhead electric wire, and the failure to move the wire from its position over the steel building. As a result of the Tveter complaint, a third-party complaint was filed by Donald and Leo Klosterman against Lloyd L. Hingst, Jr., seeking indemnity or contribution from Hingst. The third-party action is based on the fact that the contract for the construction of the steel building was awarded to the Defendant Hingst. Subsequently, a cross-claim was filed by R.S.R. Electric Cooperative against Hingst seeking indemnification and/or contribution. The cross-claim is based on the contention that Hingst failed to give notice to R.S.R. of the proposed construction site.

Thereafter considerable correspondence ensued relative to whether or not Allied would defend on behalf of Mr. Hingst. A request to defend and Non-waiver of Rights was executed by Hingst on June 21, 1972. There followed a Notice of Appearance by the firm of Vaaler, Gillig, Warcup, Woutat and Zimney as attorneys for Hingst. Allied commenced the instant action on August 29, 1972, and seeks a determination of its liability to the Defendant. As grounds for its action, Allied contends that the work operations of the Defendant relative to the construction contract of June 27, 1970, had terminated prior to the date of the Tveter injury (July 25, 1970), and as a result of said termination under the terms of the insurance contract, the Plaintiff, Allied, had no obligation to furnish a defense to Hingst, or to pay any judgments that might be rendered against him.

### I.

Allied relies on the "completed operations hazard" exclusion contained within the policy, to-wit:

" 'completed operations hazard' includes bodily and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but *only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.* 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times: (Emphasis added)

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but

which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof.

(b) The existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies 'including completed operations';"

Under the policy, one can obtain "completed operations hazard" coverage by specifically electing it on the face of the policy. Whether Hingst desired this additional coverage or not is immaterial to the issue here. From the face of the policy it is clear that he did not purchase this endorsement and consequently did not have completed operations coverage.

Absent this endorsement, Hingst did not have coverage for any liability arising after the contracted for operation had been completed or abandoned. It is Allied's contention that Hingst had completed his obligation on the contract prior to the date of Tveter's injury, thus no policy coverage.

The Court finds:

1. On June 27, 1970, Hingst and Klostermans entered into a written contract wherein Hingst agreed to furnish the labor and tools for the construction of a building on the Klostermans' farm.

2. The materials were to be furnished by Klostermans.

3. Hingst actually began work on the building on June 25, 1970. While working on the building, Hingst orally agreed to procure a quantity of reinforcement rods for Klostermans.

4. The materials necessary to finish the building did not arrive on schedule, and Hingst left the Klostermans' project on July 15, 1970, and commenced another job.

5. When the materials did arrive, Leo Klosterman telephoned Hingst and informed him the materials had arrived. Hingst replied that because of his present job, it would be several days before he could get back to the Klostermans' farm. Because of Klosterman's urgency to get the building completed, he suggested to Hingst that he have another contractor, Vernon Brosowski, finish the building. Hingst agreed.

6. Klostermans then hired Brosowski to complete the building and it was completed by Brosowski. During the course of Brosowski's completion, Tveter, an employee of Brosowski, was injured.

7. Hingst at no time resumed work on the building and did not return to the Klostermans' farm, except in August, 1970, when he returned to deliver the reinforcing rods and to pick up some scaffolding that he had left there. There was no evidence to indicate that the parties intended to reserve any rights under the contract after Brosowski was hired to complete the building.

■ On these facts, the Court concludes that the parties by mutual consent had terminated the contract and Hingst had abandoned the project prior to the date of the Tveter accident.

■■ The central question presented is when is an operation completed or abandoned within the meaning of this policy. Admittedly, Hingst had not finished construction of the building at the time of his departure on July 15, 1970. The "completed operations hazard" provision of the policy states clearly that in order for the provision to become effective, the operation may be either completed or abandoned. A contract may be abandoned or relinquished by agreement or conduct. In order to establish either, the parties must have formed the actual intent. This intent may be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is claimed to have resulted.

**1208**

Phillips Petroleum Co. v. Rau Construction Co., 130 F.2d 499 (8th Cir. 1942). 17 Am.Jur.2d § 484. See also Busch v. Globe Industries, 200 Cal.App.2d 315, 19 Cal.Rptr. 441, 445 (1962).

Defendant argues the ancillary steel rod obligation was a part of the overall obligation to finish the project, and performance had not been completed at the time of the accident because the rods had not been delivered. This argument is without merit. The steel rod agreement was separate and apart from the construction contract. The construction contract obligated Hingst to furnish only labor and necessary tools. It excluded materials.

When Hingst left the Klostermans' farm on July 15, 1970, he left behind some scaffolding which was still on the project the day of the Tveter accident. Defendant asserts that this fact takes the liability out of the completed operations exclusion since "completed operations" as defined, do not include injuries arising out of the existence of tools, uninstalled equipment or abandoned or unused materials. This argument is equally without merit in view of Vernon Brosowski's stipulated testimony to the effect that he has no recollection of his crew using any scaffolding, tools, materials or other equipment belonging to Hingst.

## II.

The remaining issue is whether the request to defend and non-waiver of rights agreement estops the Plaintiff from withdrawing from the defense of Civil #4634. Plaintiff takes the position that if there is no coverage under the policy, there is no duty to defend.

■ It is a well established principle of insurance law that an insurer is under no obligation to undertake the defense of an action where there is clearly no liability under the terms of the insurance policy. Universal Towing Co. v. Hartford Fire Insurance Co., 297 F. Supp. 1290, 1295 (E.D.Mo.1969); Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81, 85 (1942) Annot., 50 A.L.R.2d 458.

■ As is often the case, however, the insured's liability under the policy cannot be ascertained with certainty. If an insurer should erroneously determine there to be no coverage and thereby refuse to defend the action, it may constitute an unjustified refusal and leave the insurer liable for breach of contract. 44 Am.Jur.2d, Insurance §§ 1538, 1544.

■ Thus where an insurer is doubtful about its liability and wishes to retain all its rights and at the same time protect itself against the claim that it has unjustifiably refused to enter a defense, it may enter into a non-waiver agreement with the insured. 44 Am. Jur.2d, Insurance § 1556.

In the case before us, the attorneys for the insurer indicated by letter dated April 25, 1972, addressed to Defendant's attorney, that they believed there to be no coverage under the policy and they would not undertake a defense of Civil 4634 without a signed reservation of rights and non-waiver agreement. On April 27, 1972, the Defendant's attorney, by letter, asked the Plaintiff's attorney to draft such an agreement. The Plaintiff, on June 14, 1972, by letter, indicated they would defend Hingst under a reservation of rights and non-waiver agreement. Hingst signed the agreement on June 21, 1972, and it was returned to Plaintiff's attorney the day following.

By the terms of the agreement, it is stated that any actions undertaken by the insurer in behalf of the insured, Hingst:

> "shall not waive or invalidate *any* of the rights of the company . . . and no act of the company shall be construed as an admission of liability or as an admission of coverage . . ." (Emphasis added).

On August 29, 1972, the Plaintiff filed a complaint seeking a declaratory judgment to determine the extent of policy coverage and whether a duty to defend exists.

During the pendency of the declaratory judgment action, the Plaintiff entered into the defense of Civil 4634 by taking depositions of various parties and, as required by local court rules, entered a notice of appearance on behalf of the Defendant.

The Defendant urges that after securing the reservation of rights, noticing its appearance and participating in the case (Civil 4634), the insurer cannot now abandon the actual defense of Hingst.

Merely entering into the defense of a case under a non-waiver and reservation of rights agreement does not prevent an insurer from seeking declaratory relief to determine its liability to defend under the policy. Iowa National Mutual Ins. Co. v. Liberty Mut. Ins. Co., 43 Wis.2d 280, 168 N.W.2d 610, 613 (1969), Generally, Maryland Casualty Co. v. Tindall, 117 F.2d 905, 908 (8th Cir. 1941) Annot., 49 A.L.R.2d 694, 700. The Iowa case states that such agreements serve to provide the insured with "temporary protection . . . even though it may turn out he was not entitled to such protection." (Emphasis Added). The case further states that an insurer need not wait until its liability is determined before it can have its duty to defend determined.

Having determined that there is no coverage, may the Plaintiff, Allied, discontinue its defense? The Court holds it may.

A declaratory judgment settles definitely the question of the insurer's duty to defend. Annot., 49 A.L.R.2d 694, 700, 50 A.L.R.2d 458, 463.

Whether or not an insurer may withdraw from the defense of the case depends upon whether there was a prior disclaimer of liability, notice of intent to withdraw given to the insured, and whether any prejudice will result thereby. Annot., 44 Am.Jur.2d § 1557.

The Court finds that notice of possible withdrawal was given in the first instance by the non-waiver agreement. The agreement clearly states that no rights of the insurer will be abrogated by them entering the defense. While the right to withdraw at any time is not specifically set out in the agreement, it is implicit as one of the rights concomitant with the right to have the liability under the policy determined by declaratory judgment. Further indication of possible withdrawal became evident upon the Plaintiff's filing for declaratory relief. It has long been the rule that an insurer's timely disclaimer of liability bars application of the rule that assumption of a defense by an insurer estops the insurer from claiming non liability under the policy. Annot., 38 A.L.R.2d 1148, 1168.

Inasmuch as no coverage exists and the Defendant had notice of withdrawal, it is the holding of this Court that the Plaintiff has no duty to continue in the defense of Civil 4634, as Defendant at all stages has been represented by personal independent counsel. No serious prejudice would ensue by reason of the withdrawal. All depositions that have been taken in preparation for the trial of Civil 4634 will still be available to the Defendant and his counsel.

### III.

The Defendant may not recover attorney's fees he has incurred by reason of this action. Rent-A-Scooter v. Universal Underwriters Ins. Co., 173 N.W.2d 9, 11–12 (Minn.1969).

It is ordered that Plaintiff have judgment that there is no coverage to Defendant under Policy No. GA63380, and Plaintiff is under no duty to defend, on the claims asserted against the Defendant in Civil 4634. Costs are not awarded to either party.