Gordon E. LONNING, Plaintiff
and Appellant,

v.

Philip J. KURTZ, Adrian J. Fischer, and Richard A. Fischer, Defendants
and Appellees.

Civ. No. 9678.

Supreme Court of North Dakota.

April 21, 1980.

Richard B. Baer, of Baer, Asbridge & Hager, Bismarck, for plaintiff and appellant.

B. Timothy Durick, of Pearce, Anderson, Thames & Durick, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Gordon E. Lonning appeals from a judgment entered on May 17, 1979, by the Burleigh County district court, holding that Lonning's interest in a partnership with

Philip J. Kurtz, Adrian J. Fischer, and Richard A. Fischer was dissolved no later than August 5, 1977, and that Lonning was entitled to the value of his partnership interest as of that date. We affirm.

The record shows that Kurtz was the owner of certain real property in Burleigh County upon which he was attempting to develop a mobile home park. Kurtz began developing the project but encountered financial difficulties. He approached Adrian Fischer for possible financial backing and through him became acquainted with Richard Fischer and the plaintiff, Gordon Lonning. These parties entered into a partnership agreement to develop the property. On June 30, 1977, the parties reduced their agreement to written form.

In conjunction with the partnership agreement, a contract for deed was entered into whereby Kurtz agreed to sell to each of the other partners an undivided 20 percent interest for a $52,000 payment in the property intended for development. After receiving the specified down-payment of $10,-400 plus a mortgage on the balance due from each other partner, Kurtz was to convey a partial interest in the property to the other partners who would in turn convey their interests to the partnership in order to become general partners. Because of financial difficulties, the other partners were unable to pay the total down-payment required, so Kurtz agreed to forego his right to demand immediately the full down-payment. However no deed for the property was ever delivered under this contract.

Dissension developed among the partners. On August 5, 1977, Lonning wrote to the remaining partners stating they had indicated to him that they no longer wanted him in the business. He went on to say he wished to remain in the partnership but offered to accept a certain sum, plus certain equipment and materials in settlement of his interest, "in stead of invoking Article XI" of the partnership agreement, which provided for the settlement of partnership interests in the event a partner left the partnership for whatever reasons. If the offer was unacceptable, Lonning stated, the letter was to be considered notice to sell his interest in the partnership and that the other partners should prepare to call appraisers pursuant to Article XI. The partners met to discuss the matter but were unable to reach an agreement. Thereafter, Lonning did not associate himself with the partnership, and the remaining partners arranged financing and continued to develop the property as a partnership without the involvement of Lonning.

In February of 1978, Lonning sued for an accounting and appraisal of the partnership assets along with an interest in the assets commensurate with his investment. The district court found that the partnership had been dissolved not later than August 5, 1977, by Lonning's withdrawal or expulsion or his letter of August 5, 1977, and that, pursuant to Article XI of the partnership agreement, Lonning was entitled to an accounting. It ordered that Lonning was entitled to the value of his interest in the partnership property, which the court found to be one percent.[1]

Lonning now appeals from this judgment.

On appeal Lonning contends that the partnership he entered with Kurtz and the Fischers has not been dissolved, either by agreement or by operation of law. While it is true that a partnership may be dissolved by an agreement of the partners [Sec. 45–09–03(1)(c), N.D.C.C.], or by court order [Sec. 45–09–04, N.D.C.C.], as was considered by this court in *Liechty v. Liechty,* 231 N.W.2d 729 (N.D.1975), these are not the only ways to dissolve a partnership.

"Dissolution," as the term is used in the Uniform Partnership Act, "is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Sec. 45–09–01,

---

1. This computation was based upon a finding that Lonning had paid a total of $2,600 into the partnership, which amounted to five percent of the $52,000 required to be paid in order to entitle Lonning to a 20 percent interest in the partnership. This is one percent of the total partnership property.

N.D.C.C. It designates the point in time when the partners cease to carry on the business *together.* So defined, "dissolution" is a technical legal concept, unlike the usage found in other areas of the law such as corporations. "Dissolution," under the Uniform Partnership Act, is not synonymous with "winding up" and "termination," which are additional steps in completing the affairs and ending a partnership. *Accord, Woodruff v. Bryant,* 558 S.W.2d 535 (Tex. Civ.App.1977); *Ramseyer v. Ramseyer,* 98 Idaho 47, 558 P.2d 76 (1976); *Englestein v. Mackie,* 35 Ill.App.2d 276, 182 N.E.2d 351 (1962); and see Official Comment, Uniform Partnership Act (U.L.A.) § 29.

Section 45–09–03, N.D.C.C., states in part that dissolution is caused without violation of a partnership agreement:

"d. By the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the partners."

The agreement entered by the parties here on June 30, 1977, contained such a provision for expulsion. Article XII of the agreement states:

"The partnership may expel any partner by a vote of the remaining partners holding eighty percent (80%) of the partnership interest for any reason that the remaining partners may deem appropriate. Any partner who shall be expelled from the partnership shall be entitled to the same rights, obligations and interests provided in Article XI for a departing partner."

Furthermore, Section 45–09–10, subsection 1, N.D.C.C., provides:

"1. When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, *unless otherwise agreed,* may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by [the] expulsion of a partner, bona fide under the partnership agreement and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under subsection 2 of section 45–09–08, he shall receive in cash only the net amount due him from the partnership." [Emphasis added.]

In Crane & Bromberg, *Law of Partnership,* § 74(d) (1968), the authors, in discussing partnership agreement provisions for expulsion, state:

"The partnership agreement may provide for expulsion of a partner, either automatically or by vote of a designated portion of the remaining partners. The expulsion may be conditioned on specific causes, which must be shown to exist in fact to justify the exercise of the power. Or it may be authorized when the other partners deem it desirable in the interests of the partnership, or entirely without cause.

"Expulsion provisions are rare because of each partner's fear that the others may gang up on him. However, if properly limited, they are useful, especially for professional firms which might be disqualified by the actions of a member. Whatever their merit, expulsion provisions carry the significant consequence that the expelled partner is entitled only to a cash settlement, without liquidation of the business." [Footnotes omitted.]

We believe the evidence was sufficient for the district court to determine that Lonning had been expelled pursuant to the partnership agreement.

In addition, the district court found:

"If he withdrew, as he also had the right to do under the partnership agreement, the withdrawal would likewise cause a dissolution of his interest."

Even if the partnership agreement had not provided for dissolution upon expulsion or voluntary withdrawal, any partner could have dissolved the partnership at any time.

■ No one can be forced to continue a partnership against his will. The power to dissolve is inherent in every partnership. The partners, by their agreement, may provide that the partnership will continue for a definite time or particular undertaking, but this does not limit a partner's power—only his right—to dissolve, in which case the dissolving partner may be liable for breach of contract. *Accord, Woodruff v. Bryant, supra; De Martino v. Pensavalle*, 56 A.D.2d 589, 391 N.Y.S.2d 461 (1977); *Straus v. Straus*, 254 Minn. 234, 94 N.W.2d 679 (1959); *Atha v. Atha*, 303 Mich. 611, 6 N.W.2d 897 (1942). As noted in the Official Comment to Section 31, Uniform Partnership Act (U.L.A.):[2]

"The relation of partners is one of agency. The agency is such a personal one that equity cannot enforce it even where the agreement provides that the partnership shall continue for a definite time. The power of any partner to terminate the relation, even though in doing so he breaks a contract, should, it is submitted, be recognized.

"The rights of the parties upon a dissolution in contravention of the agreement are safeguarded by Section 38(2) [Section 45–09–10(2), N.D.C.C.], *infra*."

Even if, as Lonning argues, there was no agreement or court order for dissolution, we believe that the record clearly shows that after August 5, 1977, Lonning was no longer "associated in the carrying on . . . of the business." Under these circumstances we find no error in the district court's determination that Lonning's partnership with the others had been dissolved.

■ After dissolution, a partnership continues until the winding up or liquidation of partnership affairs is completed. Then the partnership terminates. Sec. 45–09–02, N.D.C.C. Although dissolution may be followed by liquidation, this need not occur if the partnership agreement provides for continuation of the partnership business after dissolution and the departing partner is paid for his partnership contribution and share of accumulated profits. *Accord, Maras v. Stilinovich*, 268 N.W.2d 541 (Minn. 1978); *Wathen v. Brown*, 200 Pa.Super. 620, 189 A.2d 900 (1963); *Gill v. Mallory*, 274 App.Div. 84, 80 N.Y.S.2d 155 (1948).

The partnership agreement entered by Lonning and the others contained the following provisions:

## "ARTICLE X

"The death, retirement, expulsion or absence of any partner will not dissolve the partnership as to the other partners unless agreed by all partners.

## "ARTICLE XI

"In the event any partner leaves the partnership by reason of death, disability, expulsion, retirement, or for any other reason, the departing partner or successor in interest, must first offer and sell to the remaining partners its partnership interest. Said option to purchase by the remaining partners shall extend for a period of ninety (90) days after written notice to the remaining partners. Said departing partner must make his share available pro-rata to the remaining partners. For purposes of any purchase under the terms of this Article, if the partners cannot agree on a price, the selling price of said departing partner's interest in the partnership's real property shall be determined by competent real estate appraisers. The parties to this agreement must elect two appraisers and the two selected appraisers shall select a third appraiser. The three appraisers must agree to a market value of said property for the purpose of distribution to the departing partner. If the three appraisers cannot agree, new appraisers shall be selected, again pursuant to this Article. The decision of the three appraisers shall become binding on all partners."

---

2. This section is codified as Section 45–09–03, N.D.C.C.

In addition, the record reveals that Lonning had been discharged from his partnership liabilities by agreement as provided under Section 45–09–08, subsection 2, N.D. C.C.[3]

Lonning, along with the others, had signed an unsecured note with the State Bank of Burleigh County for a $10,000 loan made to the partnership as preliminary financing to start the project. He also, with the others, signed a personal guaranty on credit to be extended to the partnership. But Mr. Ronald Lamphear, who handled the loan file for the bank, stated that Mr. Lonning was not liable on the note nor under the guaranty. The note, which Lonning had signed along with the others, had been paid off with moneys from a $300,000 loan made to Kurtz and the Fischers. Lonning had signed neither the note nor the mortgage on the $300,000 loan. The bank still has the personal guaranties signed by Lonning and the others for any credit extended to the partnership, but the $300,000 loan was made to the remaining partners individually, and the bank has not made any loans in the name of the partnership. Mr. Lamphear indicated the bank would be willing to tear up the guaranty signed by Lonning if the other remaining partners signed a new one.

Prior to the finalization of the $300,000 loan, Kurtz indicated to Lamphear that Lonning was no longer a partner and that responsibility for the loan rests with the remaining partners. Sometime after the $300,000 loan was made, Lonning himself contacted the bank and was informed by Lamphear that he was not liable for either the $10,000 loan or the $300,000 loan. We believe the trial court could infer from these facts that Lonning had been released from any partnership liability existing at the time his partnership with the others was dissolved.

Lonning also asserts that he has an interest in certain real property held by the partnership because of the contract for deed entered into by himself and the others in conjunction with the partnership agreement. We do not agree, because the facts in this case indicate the partners abandoned the contract which Lonning now attempts to enforce.

The contract for deed was entered into so that each partner would own an undivided interest in the specific real property intended for the trailer court, which was to be contributed to the partnership. This contract for deed was executed only to effectuate the partnership's purpose of opening a trailer court. When the partnership was dissolved, the partners, through their action, also showed their intent to abandon the contract for deed they had entered into. See *Allied Mutual Insurance Company v. Hingst*, 360 F.Supp. 1204 (D.N.D.1973); *Enderlien v. Kulaas*, 25 N.D. 385, 141 N.W. 511 (1913).

Even if the mutual intention to abandon the contract had not been shown through dissolution of the partnership, Kurtz had grounds for rescinding the contract under Section 9–09–02, N.D.C.C., which provides, in part:

"A party to a contract may rescind the same in the following cases only:

"1. . . .

"2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part; . . ."

The contract required, as consideration, $10,400 as down-payment plus payment of $41,600 over a ten-year period. Lonning was unable to make this required down-

---

**3.** This subsection provides:

"2. A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business."

This agreement is required under Section 45–09–10, subsection 1, N.D.C.C., before a partnership is allowed to continue without liquidation.

payment and the contract failed for lack of consideration. It is true the Fischers were also unable to make the required down-payments and that Kurtz had agreed to refrain from demanding immediately the down-payments, but this is further evidence that the original contract for deed had been abandoned.

We affirm the judgment of the district court with costs, and order that Lonning be paid for his partnership interest as of August 5, 1977, in accordance with the provisions of Article XI of the partnership agreement.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.