[No. 4858.  Decided January 5, 1904.]

CHARLES THEIS, *Appellant*, v. SPOKANE FALLS GAS
LIGHT COMPANY *et al., Respondents.*[1]

CORPORATIONS—DISINCORPORATION—BONA FIDE INTENT TO DIS-
CONTINUE BUSINESS—FRAUD ON MINORITY STOCKHOLDERS.  Bal.
Code, § 4275, providing that any corporation may dissolve and
disincorporate by application to the superior court upon a vote
of two-thirds of the stockholders, authorizes a disincorporation
only upon a bona fide intent upon the part of the people interested
to discontinue the business, and does not, as against the objec-
tion of a single stockholder, authorize a dissolution of a prosper-
ous company for the purpose of enabling the majority stock-
holders to get control of the business by a sale of the property
and the organization of a new corporation, with the same powers,
and to continue the same business.

SAME—ACTUAL INTENT TO DISSOLVE—WHEN NOT SHOWN. Actual
intent to dissolve a corporation by proceedings to disincorporate
is not shown, where the company was prosperous, and a syndi-
cate of the majority stockholders attempted to purchase all the
stock, and organized a new company of slightly different name,
to operate in the same town, with the same powers and sub-
stantially the same owners, and the object was plainly to get
rid of a stockholder who had refused to sell his stock.

SAME—SUFFICIENCY OF EVIDENCE. A dissolution of a corpora-
tion by proceedings to disincorporate by a two-thirds vote of the
stockholders is not warranted by the fact that one object was
to secure a larger bonded indebtedness at a less rate of inter-
est, when the majority owners of the stock were also owners of
the bonds and consented to release the same upon payment of
the cash.

SAME—CONCLUSIVE EVIDENCE OF FRAUD. That such a dissolu-
tion was a scheme in the interests of the majority stockholders
is conclusively shown by the testimony of their representative to
the effect that they were not out here for philanthropy and would
not be reducing the rate of interest if it were a benefit to the
minority stockholders.

[1]Reported in 74 Pac. 1004.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered July 3, 1903, after a trial upon the merits before the court without a jury, dismissing an action brought by a stockholder to enjoin the sale of the entire property of a corporation. Reversed.

*Post, Avery & Higgins,* for appellant, to the point that the sale without the consent of all the stockholders was *ultra vires,* cited: *Abbott v. American Hard Rubber Co.,* 33 Barb. Sup. Ct. Rep. 578; *Kean v. Johnson,* 9 N. J. Eq. 401; *People v. Ballard,* 134 N. Y. 269, 32 N. E. 54; *Byrne v. Schuyler El. Mfg. Co.,* 65 Conn. 336, 31 Atl. 833; *Forrester v. Boston etc. Min. Co.,* 21 Mont. 544, 55 Pac. 229, 353; *Parsons v. Tacoma Smelting etc. Co.,* 25 Wash. 492, 65 Pac. 765. The method prescribed for dissolution must be strictly complied with. *Fitzgerald v. Quann,* 109 N. Y. 441, 17 N. E. 354; *Hitch v. Hawley,* 132 N. Y. 212, 30 N. E. 401; *Kohl v. Lilienthal,* 81 Cal. 378, 20 Pac. 401, 22 Pac. 689. The sale of its entire property is a dissolution without compliance with the statute. *Abbott v. American Hard Rubber Co., supra.* A dissolution without a *bona fide* discontinuance of business is a fraud on dissenting stockholders. 2 Cook, Corporations, § 670; *Kean v. Johnson, supra; Boston etc. R. Corp. v. New York etc. R. Co.,* 13 R. I. 260; *Byrne v. Schuyler El. Mfg. Co., supra.*

*George Ladd Munn, Thayer & Belt,* and *Walker & Munn,* for respondents. The statute authorizes a dissolution at the will of two-thirds of the stockholders. Bal. Code, § 4275; *Parsons v. Tacoma Smelting etc. Co.,* 25 Wash. 492, 65 Pac. 765; *Metcalf v. American etc. Furn. Co.,* 122 Fed. 115. Equity will not, at the suit of minority stockholders, enjoin a corporate act, unless it is an attempted exercise of a clearly unauthorized power. *Ma-*

*son v. Pewabic Min. Co.,* 133 U. S. 50, 10 Sup. Ct. 224; *Oglesby v. Attrill,* 105 U. S. 605. The law has nothing to do with the motive for a legal act. *McFadden v. Mays etc. R. Co.,* 49 N. J. Eq. 176, 22 Atl. 932; *Republican etc. Mines v. Brown,* 58 Fed. 645; *Davis v. Flagg,* 35 N. J. Eq. 491; *Toler v. East Tennessee etc. R. Co.,* 67 Fed. 168; *Shaw v. Davis,* 78 Md. 308, 28 Atl. 619, 23 L. R. A. 294; *Pender v. Lushington,* L. R., 6 Ch. Div. 70. The statute becomes part of the contract, and the court is powerless to inquire into the motives of the majority. *Triscomi v. Winship,* 43 La. An. 45, 9 South. 29, 26 Am. St. 175 (the only case on the precise point); *Cincinnati Volksblatt Co. v. Hoffmeister,* 62 Ohio St. 189, 56 N. E. 1033, 78 Am. St. 707; *Carson v. Iowa City Gas L. Co.,* 80 Iowa 638, 45 N. W. 1068.

DUNBAR, J.—The Spokane Gas Light Company, a corporation, one of the respondents herein, was organized under the general incorporation laws of the state of Washington in the year 1887. Its life, under the articles of incorporation, was fifty years. In March, 1903, three companies of eastern bond buyers, viz., N. W. Halsey & Co., Farson, Leach & Co., and Cyrus Pierce & Co., purchased the bonds outstanding against this corporation, and formed a syndicate for the purpose of purchasing the shares of stock of the corporation, and sent a member of the firm of Cyrus Pierce & Co., Isaac W. Anderson, to Spokane as their representative.

It was the object of Mr. Anderson, as representative of the syndicate, to purchase all the outstanding stock of the company, and nearly all of said stock was so purchased. However, the appellant, Charles Theis, the owner of eight shares of stock, refused to sell his stock to the syndicate. By resolution, passed by a more than two-thirds majority

of the stockholders, it was determined that the entire
property of the corporation should be sold; whereupon
this action was brought by the appellant to enjoin the
sale of the entire property of the corporation.   The origi-
nal defendants were the corporation, A. D. Hopper, the
president, W. A. Aldrich, the secretary, and Isaac W.
Anderson, a member and the representative of the east-
ern syndicate.   The application for an injunction was
denied, and the property was struck off to one Charles S.
Reeves, who, it is admitted, had been selected by Anderson
to act as agent for the syndicate; and, immediately upon
the sale of the property, Anderson filed articles of in-
corporation of a new company called Spokane Gas Com-
pany.

Thereafter, by leave of the court, plaintiff filed a sup-
plemental complaint, and brought in, as additional parties,
said Reeves, Spokane Gas Company, and all members of
the syndicate.   Application was made for an injunction,
and a hearing had upon said application.   The answer
denied that the proposed sale was a scheme of reorganiza-
tion conceived for the purpose of forcing the small stock-
holders out of the corporation.   It was agreed that testi-
mony should be heard as upon the merits of the case,
and it was so heard; and upon said hearing judgment of
dismissal of the action was entered by the court, from
which judgment this appeal is taken.

A circumstantial review of the testimony in this case
would not be profitable, but, from an examination of all
the testimony, we are convinced beyond a doubt that the
object of the attempt to dissolve the corporation was for
the purpose of getting rid of uncongenial minority stock-
holders.   This plainly appears from the testimony of both
the appellant and the respondents.   The corporation Spo-
kane Falls Gas Light Company appeared by one attorney,

and the syndicate by another, though it appears from an examination of the record that they regarded their interests as identical. On the question of the object of the dissolution, the syndicate representative, Mr. Anderson, in his testimony, was very candid; evidently construing the statute, which will hereafter be noticed, as granting an absolute right to a two-thirds majority of the stockholders to disincorporate for any reason which seems to them necessary. So that the real question to be determined here is, whether or not the statute confers power upon a two-thirds majority of a prosperous corporation to disincorporate and dispossess minority stockholders of their stock by paying them the market price for the same.

There is some contention in this case that it was the intention of the appellant to obtain a majority of the stock of this corporation and then undertake to do what has been undertaken by the majority stockholders. However that may be, it is not a pertinent question here, for the law would apply to him as it will to the respondents.

It is conceded that at common law a corporation had no power to dissolve excepting by universal consent of stockholders, and that an injunction would be granted upon the application of a single stockholder to prevent such dissolution; but appellant contends that authorities cited to that effect are not in point, for the reason that the statute abrogates the common law rule. Section 4275, Bal. Code, is as follows:

"Any corporation formed under this chapter may dissolve and disincorporate itself by presenting to the superior judge of the county in which the office of the company is located a petition to that effect, accompanied by a certificate of its proper officers, and setting forth that at a meeting of the stockholders, called for the purpose, it was decided, by a vote of two-thirds of all the stockholders, to disincorporate and dissolve the corporation. Notice of

the application shall then be given by the clerk, which notice shall set forth the nature of the application, and shall specify the time and place at which it is to be heard, and shall be published in some newspaper of the county once a week for eight weeks, or if no newspaper is published in the county, by publication in the newspaper nearest thereto in the state. At the time and place appointed, or at any other time to which it may be postponed by the judge, he shall proceed to consider the application, and if satisfied that the corporation has taken necessary preliminary steps and obtained the necessary vote to dissolve itself, and that all claims against the corporation are discharged, he shall enter an order declaring it dissolved."

Under the provisions of this statute, it is the contention of the respondents that an absolute right is given a two-thirds majority to dissolve the corporation whenever they see fit; and the broad ground is taken, that, inasmuch as the corporation is acting within its legal capacity, the court has no right to inquire into the motives which actuated the moving stockholders; that its only concern is to see that the formal legal requirements have been complied with; and such was evidently the theory adopted by the trial court. This, in a sense, is true, and would apply to this case if the actual attempt was to dissolve the corporation, within the meaning of the law. But a court of equity will never aid in the perpetration of a fraud simply because application is made in empty form of law. Its powers are not so superficial, or so restricted. Equity is, we are told, the correction of that wherein the law, by reason of its universality, is deficient. He who asks its aid must present himself with clean hands. Its special mission is to relieve from fraud, and to enforce the observation of broad and just principles. If it appeared from the testimony in this case that this was an attempt to dissolve the corporation, and legal requirements

had been complied with, the duty of the court to adjudicate
such dissolution would be plain; for it is no doubt true
that, when the stockholders entered into the contract by
which they obtained their stock, they must be held to have
contracted with reference to the law which gave a two-
thirds majority of the stockholders power to dissolve the
corporation.

But as we read the record in the case, there was no at-
tempt to dissolve the corporation, and it cannot be said
to have been within the contemplation of the contract that
a two-thirds majority, or any majority, had a right to
juggle with the corporation and the law.  The object of
the law is a beneficial one, and is to prevent a small
minority from unduly influencing the corporation and
preventing its dissolution, under circumstances unfavor-
able to its existence.  But the record here shows conclu-
sively, that no real cause for dissolution existed; that the
corporation was making money and prospering in every
way; and, while this would probably not be a sufficient
reason why a court should not grant the dissolution, it
bears upon the question of whether or not there was an
actual intent to disincorporate.  But it is plainly stated
that the object was to get rid of a disagreeable stockholder
who would not sell his stock, Anderson testifying that the
Spokane Gas Company was formed for the purpose of
taking over the gas plant.  It is apparent that, if the re-
spondents could have purchased appellant's stock, the dis-
incorporation would not have been thought of.  The prac-
tice is one which is frequently indulged in for the pur-
pose of what is described in vulgar phrase as "freezing
out" small stockholders—a compliance with the letter, in-
stead of the spirit, of the statute—a pernicious practice
which the courts of equity cannot too promptly condemn.
A dissolution of a corporation within the contemplation

of the law is the death of the corporation. It means a disintegration, a separation, a going out of business.

But in this case, all of the elements of dissolution are wanting. The corporation, with a slightly different name, proceeded in the same town, with the same property, the same powers, and substantially the same owners. All the difference is about what was testified by the president of the corporation—that, after the new company was formed, the minority stockholders' interest would be represented by a deposit in the bank instead of stock in the corporation. It might with as much reason be concluded that a man could escape responsibilities by changing his name, and that, by such change, his moral or financial relations with those with whom he was engaged in business under the old name would be affected. It is not enough to say that appellant received all his stock was worth. He embarked in this business, and had a right to stay in the business during the expressed life of the corporation, or until it was dissolved by a fair compliance with the law. The rule is thus announced by Cook on Corporations, § 670:

"Neither the directors nor a majority of the stockholders have power to sell all the corporate property as against the dissent of a single stockholder, unless the corporation is in a failing condition. Ever since the case of *Abbott v. American Hard Rubber Company* the law has been clearly established in this country that a dissenting stockholder may prevent the sale of all the corporate property by the directors or by a majority of the stockholders, where the corporation is a solvent, going concern. And even where a dissolution is the purpose in view, yet, if the corporation is a prosperous one, such a sale cannot be made. Indeed it is very doubtful whether a dissolution can ever be had by a majority of the stockholders where the corporation is a going, prosperous concern."

It is said by learned counsel for respondents that Mr.

Cook is a New York lawyer, and speaks, with reference to this point of view, of the statute in that state, there being no provision in the statute similar to our statute upon which the respondents rely. But the next announcement made by the author cannot be construed in any other light than an intention to announce the law to be opposed to the toleration and encouragement of deceitful devices, whereby the letter of the law is complied with and the spirit of the law violated, for he says:

"And certainly if the purpose of such dissolution is not the *bona fide* discontinuance of the business, but is the continuance of that business by another new corporation, then the rule is that a dissenting stockholder may prevent the sale, even though it is made with a view to dissolution of the corporation. This is the law as laid down in the well-considered case of *Kean v. Johnson,* 9 N. J. Eq. 401. Such a dissolution is practically a fraud on dissenting stockholders. It seeks to do indirectly what cannot legally be done directly."

And the cases cited by the author, while not decided under statutes similar to ours, all breathe the same determination to compel straightforward dealing on the part of corporations to whose care and management are intrusted the interests of their stockholders. And in this age, when the great volume of the business of the country is done, and must necessarily be done, by corporations, courts of equity must not relax their vigilance in protecting individual interests which, in the aggregate, constitute the interests of the corporation, and, in accordance with the time-honored rule, will strictly construe statutes which are in derogation of the common law.

The result of a successful practice such as is attempted here will be that minority stockholders will always be at the mercy of the majority. If the enterprise fails, they bear their proportion of the losses. If, on the other hand,

it succeeds, as soon as it passes the experimental stage, and the opportunity is presented to finally reap the reward of a judicious investment, they are coolly ejected from the corporation by a majority of the stockholders, who appropriate to themselves the accruing profits. In other words, they might be termed experimental dupes, who are subjected to the necessity of contributing to the losses, but denied the privilege of sharing the profits. The following pertinent language is used by the New Jersey court of chancery, in *Kean v. Johnson,* 9 N. J. Eq. 401. In answer to the contention that, under a certain provision of the law, a majority of the stockholders had the power to sell all the property of the concern and quit the business, and that the minority stockholders must be content with their proportionate share of the proceeds of the sale, the court said:

"On principle, this position seems to me unsound. If it be true, a minority is entirely in the power of a majority, and the moment a rich man or a few rich men see what they deem a better investment for their money than the corporation in which they are already stockholders, they may compel the poorer members of the company to abandon profits satisfactory to them, and either risk the little they have, according to views from which they differ, or take back their money to lie profitless on their hands, until they find another investment. Or, more nearly to approach the case in hand, as asserted by the complainants, if a rich man, or a number of rich men, possess a controlling interest in two roads whose termini meet—one already successful, the other not built, or needing nursing care—they may compel the poorer stockholders either to abandon or postpone the profitable use of their share of the capital, or take back their money and give up an investment which perhaps their own enterprise suggested, and their own perseverance recommended to the attention of others, and hazard the finding of a new investment, and a repetition of the same destruction of it. If such

were the law, corporations would soon be few, for seldom would capitalists, whatever their comparative wealth, invest in enterprises so readily rendered profitless at the caprice, or in obedience to the interest of any man or set of men rich enough to control the majority of stock."

Vastly more unjust would it be to permit the small stock-holder to be deprived of his profitable holdings by the practice upon him by a majority of a sort of legal leger-demain which, while it ostensibly dissolves the corporation, actually leaves it intact, with his interests eliminated.

The respondents, while insisting upon a literal construction of that portion of the section which permits the dissolution, declaim against the same character of construction of the latter part of the section, which provides that, before the application is granted, it must appear that all claims against the corporation are discharged.    So that it will be seen that a literal construction of the section would prevent the dissolution of this incorporation under any circumstances.

But there seems to be no merit in the contention that one object of the disincorporation was that the outstanding securities might be drawn in and a larger bonded indebtedness secured; for there was nothing to prevent the corporation from retiring its present bonded indebtedness, for the owners of the stock owned the bonds, and the bond owners consented to release the mortgage on receipt of the cash, so that it was not necessary to reorganize for the purpose of paying for the old indebtedness and incurring a new one at a lower rate of interest; and, in fact, throughout the testimony, no legitimate reason seems to have been offered for the reorganization.    On the other hand, it is apparent that the scheme was in the interests of the syndicate owning a majority of the stock, rather than in the interests of the corporation.    ·Outside of other convincing testimony, this is made conclusive by the fol-

lowing excerpt from the testimony of Mr. Anderson, on cross-examination:

"Q. So you did not need a new company to have five per cent. bonds instead of six per cent., did you? A. I understand that, but I think probably we are not out here for philanthropy, and we would hardly reduce our rate to five per cent. if we were benefiting your client, Mr. Theis."

It is contended by the appellant, that there was no sufficient notice of the sale; that, as a result of such deficient notice, there was only one bidder, namely, Charles Reeves, who, as we have seen before, bid in the property as agent for Anderson, the agent of the syndicate. But, with the construction that we place upon the statute, it is not necessary to enter into a discussion of this proposition; for, believing from an examination of the record that there was no attempt at a bona fide dissolution of the corporation, such as is contemplated by the statute, the cause will be remanded with instructions to grant the relief prayed for.

FULLERTON, C. J., HADLEY, ANDERS, and MOUNT, JJ., concur.