# RICHARD C. MAGNUSON AND OTHERS v. CITY OF WHITE BEAR LAKE.

203 N. W. 2d 848.

January 12, 1973—No. 43600.

*Newcome, Wallace & Newcome* and *Thomas W. Newcome,* for appellant.

*Oppenheimer, Brown, Wolff, Leach & Foster, John D. Healy, Jr.,* and *James D. Lano,* for respondents.

KNUTSON, CHIEF JUSTICE.

Plaintiffs brought this action to quiet title to a narrow strip of land lying between Lake Avenue in the city of White Bear Lake and White Bear Lake itself. The ownership and title to this strip of land have been the source of a dispute and much litigation that has now ranged over a period of 100 years. On July 8, 1871, Dr. Jacob H. Stewart and the Lake Superior and Mississippi Railroad Company filed a plat of "White Bear" which included the land involved in this litigation. On the easterly edge of the plat appeared "Lake Avenue," but the plat was incomplete in that it failed to show the width of several streets, including Lake Avenue. It was also incomplete in other respects. One of the defects led to the case of Village of White Bear v. Stewart, 40 Minn. 284, 41 N. W. 1045 (1889). That case involved a dispute as to whether part of the platted area was a park or whether it had been retained without dedication by Dr. Stewart.

In 1882, Dr. Stewart conveyed to one Auerbach 41 blocks and 13 partial blocks of "White Bear" according to the Stewart plat. The conveyance did not mention the strip of shoreland involved in this litigation. By deed dated July 1, 1884, Stewart quitclaimed to Auerbach the strip of shoreland east of Lake Avenue which had not been described in the original deed. Over the years, a persistent dispute has existed between the owners of property fronting on Lake Avenue and the village of White Bear (now city of White Bear Lake). In 1908, two cases came to this court involving the question of whether the city could remove certain

trees partially on the platted portion of Lake Avenue but off the traveled roadway. West v. Village of White Bear, 107 Minn. 237, 119 N. W. 1064 (1909); Gilbert v. Village of White Bear, 107 Minn. 239, 119 N. W. 1063 (1909).

At the time the Stewart plat was filed, there was a roadway to the west of Lake Avenue as shown on the plat, which roadway encroached upon the property of many of the adjacent property owners. In 1924, the city again attempted to widen Lake Avenue and met with opposition from property owners. As a result of several meetings with the city council, an agreement between the city and the property owners was reached under which the property owners gave up portions of their land which were not included either in Lake Avenue as traveled when the plat was filed or in Lake Avenue as shown on the plat, and the trial court has found that in return the city surrendered its right to the land east of a 60-foot-wide highway, which land includes the strip involved in the present litigation and the riparian rights that went with this strip. The crucial parts of the court's findings are as follows:

"The intent of the parties to the 1924 agreement was to establish a new 'Lake Avenue' and to finally resolve the errors in the survey in the 1871 plat of White Bear. The parties created a new 60 foot right-of-way consisting of portions of private platted lots, portions of the traveled road, and portions of Lake Avenue as platted. The portions of the traveled road and the portions of Lake Avenue as platted which were not required for the new 60 foot 'Lake Avenue,' were surrendered to the property owners.

\* \* \* \* \*

"No compensation was paid to the property owners as a result of the 1924 agreement for removal of trees or taking of the land necessary for the new 'Lake Avenue.' Since 1924, Plaintiffs and their predecessors in title have enjoyed the continuous exclusive possession of the entire lake shore strip East of the 60 foot right-of-way of 'Lake Avenue' without objection by the City, and have constructed a summer house, a stone barbecue fireplace, and

steps from the grade of Lake Avenue down the bluff to the beach below. They have erected numerous docks over the years, have cut the grass, trimmed the bushes, removed dead trees, and have in all respects possessed the same as private property free of use or claims by any parties except occasional use by private parties not hostile to or adverse to Plaintiffs' title. The strip of shore land has been assessed for taxes since at least 1920 and Plaintiffs and their predecessors have paid real estate taxes thereon."

The court concluded that plaintiffs own the disputed strip. On this appeal by the city, the main question presented is whether the evidence sustains the above findings of the trial court. We hold that it does.

The record is replete with evidence showing that the property owners who claim this strip of land have used it in many ways consistent only with ownership. One of the witnesses, Violet Nordgren, testified that when she acquired property which included part of this strip there was a dilapidated boathouse on the shore. In 1967 she obtained a permit from the city to build a new boathouse and a patio on the strip, which she did. Several of the owners have, over the years, built docks extending from the shore out to the deep water in the lake.

Lake Avenue appears on the Stewart plat as coextensive with the border of White Bear Lake, but the topography of the shore-land of the lake is such that it would be impossible to build a road along the lake shore. There is a steep bluff rising from the shore-land to the place where the platted road is indicated on the plat, which bluff varies in height from 10 to 20 feet. It has been necessary to build stairways down this bluff to the lake shore in order to utilize the beach. These stairways have been built and maintained by adjacent property owners for many years.

■ Most of the city's argument relates to the dedication of Lake Avenue by the Stewart plat. Had the plat shown the width of Lake Avenue, there would probably be no question that it was a valid statutory dedication; but the plat is so incomplete that it is impossible to locate the width of Lake Avenue or to deter-

mine whether it ran immediately adjacent to the bluff leading to the lake or somewhere else. When the plat was filed, the traveled road was somewhat west of Lake Avenue as shown on the plat, and the road that exists today is largely an improvement of the traveled road. Some argument is made that the city cannot relinquish land dedicated to the public use. That is usually the rule if there is no dispute as to what is dedicated. But the difficulty here is in determining what property Dr. Stewart actually intended to dedicate to the public use by his plat. In a situation of this kind we are convinced that the city had the same power to settle this dispute as do individuals and that, by the agreement entered into between the city and the property owners in 1924, the dispute was settled and a practical location for Lake Avenue was established. The doctrine of practical location was first enunciated in Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740 (1893), and was described in Benz v. City of St. Paul, 89 Minn. 31, 38, 93 N. W. 1038, 1039 (1903), as follows:

"* * * [T]he practical location of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquisced [sic] in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof, and afterwards acquiesced in; or (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached upon it, and subjected himself to expense in regard to the land, which he would not have done had the line been in dispute."

A municipality can settle a dispute as to a boundary line as well as can an individual. County of Houston v. Burns, 126 Minn. 206, 148 N. W. 115 (1914); City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. 2d 361 (1941). In the latter case we held that where a municipality permits a landowner to build and make improvements on property once dedicated as a street,

and makes no objection—in that case for 83 years—, the municipality is estopped to deny that the landowner owns the land. In the present case, until 1969, when the city adopted a resolution attempting to regulate the use of shoreland including the strip plaintiffs claim to own, the city of White Bear Lake has made no serious claim to that strip. The city has sought in the past to widen Lake Avenue by encroaching further upon private property; but in doing so, as the court found, it paid nothing for the land taken nor, so far as we have been able to determine from the record, has such property ever been condemned. We are convinced that the landowners surrendered part of this property in return for a settlement of the dispute as to ownership of the shore property. It is hard to see how else the city could have acquired the necessary property to widen Lake Avenue except by condemnation.

In view of our decision upholding the findings of the trial court that there was a settlement of this dispute between the city and the property owners in 1924, we find it unnecessary to determine whether the strip involved was included in a valid statutory dedication of Lake Avenue.

■ The city next contends that the court committed reversible error by admitting a newspaper clipping dating back to 1924 wherein the settlement between the city and the property owners was discussed. It is not clear from the record whether the court admitted this evidence or not but for the statement in his memorandum to the findings, where we find the following:

"The June 5, 1924, edition of the White Bear Press contained the following prophesy:

'All disputes, controversies, contests, gainsayings, questions, discussions, claims, arguments, debates, impugnities, alterations, quarrels, squabbles, wrangles, bickerings, misunderstandings, discourses, conversations, words, signs, motions, or expression of emotions—and things like that—relative to the Dellwood cutoff are settled now and forever more.' "

The court concludes his memorandum with these words:

"While it would be foolhardy to even now assume that this determination will at long last conclude the disputes which have arisen out of the ill-fated plat of 'White Bear,' nevertheless, presumably, the rights of these parties can soon be finally fixed."

To this statement, we say "Amen." Even if the court did consider this newspaper article, it could hardly be prejudicial. It was merely cumulative of much other evidence to the same effect.

■ The city also contends that the court erred in refusing to grant a new trial based on newly discovered evidence. The newly discovered evidence consists of excerpts of minutes of meetings of the council of the city. These excerpts indicate that at meetings of the city council held July 14, 1925, and August 4, 1925, some action was taken that might conceivably indicate ownership by the city of the land involved. While it is difficult to know exactly what was meant by these minutes, it is clear that they could have been discovered as well before the trial as after it. Under Rule 59.01, Rules of Civil Procedure, there must be a clear showing of why the evidence was not discovered before trial. The rule is discussed in Albertson v. Albertson, 243 Minn. 212, 217, 67 N. W. 2d 463, 467 (1954), where we said with respect to a divorce action:

"* * * The evidence could, under some circumstances, constitute cruel and inhuman treatment warranting divorce and, as defendant points out, the court under Rule 59.01 of Rules of Civil Procedure was authorized to take additional testimony and make amended findings of fact and conclusions of law. However, the only question before this court is whether the trial court abused its discretion in refusing to grant a new trial. Unless there is a clear showing that the result would be materially affected by the new evidence, the decision of the trial court must be sustained. Evidence which is merely contradictory, impeaching, or cumulative cannot be made the basis of a new trial except under the most extraordinary circumstances."

We think this applies here. Even though the property was privately owned, the city may well have some authority to grant or deny the right to build docks and erect steps going to the lake for the protection of the public who conceivably might use the beach from time to time with permission of the private owners. We do not believe the court abused its discretion in denying a new trial on this ground.

Affirmed.