513 P.2d 949

**Chris PRENTISS, Appellant,**

v.

**Donald J. SHEFFEL and Mortimer Iger; W. Miller Bennett, Receiver, Appellees.**

**No. 1 CA–CIV 1956.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 13, 1973.

Rehearing Denied Oct. 22, 1973.

Review Denied Nov. 13, 1973.

Lewis & Roca, by John P. Frank, Joseph E. McGarry, Edward M. Lewis, and J. David Rich, Phoenix, for appellant.

Philip T. Goldstein, Ltd., by Philip T. Goldstein, Phoenix, for appellees, Sheffel and Iger.

Duecy, Moore, Petsch & Robinson, by Charles M. Duecy, Scottsdale, for receiver Bennett.

## OPINION

HAIRE, Judge.

◼ The question presented by this appeal is whether two majority partners in a three-man partnership-at-will, who have excluded the third partner from partnership management and affairs, should be allowed to purchase the partnership assets at a judicially supervised dissolution sale. We hold that on the facts of this case, such a purchase is proper, and affirm the judgment entered by the trial court.

Suit was originally brought by plaintiffs-appellees seeking dissolution of a partnership they had formed with defendant-appellant. The partnership was created for the purpose of acquiring and operating the West Plaza Shopping Center located at Bethany Home Road and 35th Avenue in Phoenix, Arizona. (Hereinafter referred to as the Center).

As grounds for dissolution the plaintiffs contended that the defendant had in general been derelict in his partnership duties, and in particular that he had failed to contribute the balance of his proportionate share ($6,000) of the operating losses incurred by the Center. The plaintiffs also

sought the trial court's permission to continue the partnership business both during the pendency of the suit and thereafter, and requested that a value be fixed on the defendant's interest in the partnership.

Defendant filed a counterclaim seeking a winding up of the partnership and the appointment of a receiver. He contended that his rights as a partner had been violated in that he had been wrongfully excluded from the partnership.

After an extended evidentiary hearing, the trial court made certain pertinent findings of fact which are here summarized:

1. That each of the plaintiffs owned a 42½% interest in the partnership, with an aggregate interest of 85%, while the defendant was the owner of a 15% interest.

2. That no detailed partnership agreement as to how the business would be supervised, how management decisions would be made, or the term of the partnership's existence, was ever made or entered into at any time between the parties, although there were frequent attempts to arrive at such an agreement.

3. That numerous unresolved disputes arose between the parties, most notably as to how title to the partnership property was to be held, and how management decisions should be made.

4. That as a result of these disputes the relationship between the parties deteriorated, culminating with plaintiffs notifying defendant that any further dealings between them should be through their attorney.

5. That defendant had never been denied physical access to the Center; that he visted there from time to time; and that he also engaged in conversations with the resident manager of the Center.

6. That because of his poor financial condition, defendant had not made payments of all of his pro-rata share of the deficits incurred by the Center when called upon to do so.

7. That since its acquisition, the Center's losses from operations had been materially reduced, and certain more advantageous lease provisions had been secured; that there had been no showing of waste nor detriment to the Center as a result of management operations.

8. That there was a freeze-out or exclusion of the defendant from partnership management and affairs.

Based upon these and other findings of fact the trial court concluded that a partnership-at-will existed between the plaintiffs and the defendant which was dissolved as a result of a freeze-out or exclusion of the defendant from the management and affairs of the partnership. A receiver was appointed by the court until the partnership property could be sold and a partition and distribution of assets could be made. The trial court expressly refused the defendant's request that an order be entered forbidding the plaintiffs from bidding at the contemplated judicial sale.

The receiver and the trial court proceeded with the liquidation and sale of the Center. The plaintiffs were the high bidders at the sale which was held in open court. Subsequently, the court entered an order confirming the sale of the Center to them. It is from this order that the defendant appeals.

The principal contention urged by the defendant is that he was *wrongfully* excluded from the management of the partnership, and therefore, because he would in some way be disadvantaged, the plaintiffs should not be allowed to purchase the partnership assets at a judicial sale. The record, however, does not support the defendant's position on two particulars. While the trial court did find that the defendant was excluded from the management of the partnership, there was no indication that such exclusion was done for the wrongful purpose of obtaining the partnership assets in bad faith rather than being merely the result of the inability of the partners to harmoniously function in a partnership relationship.

Moreover, the defendant has failed to demonstrate how he was injured by the

participation of the plaintiffs in the judicial sale. To the contrary, from all the evidence it appears that if the plaintiffs had not participated, the sales price would have been considerably lower. Absent the plaintiffs' bid, there would have been only two qualified initial bids, which were $2,076,000 and $2,040,000 respectively. However, with the participation of plaintiffs, whose initial bid was $2,100,000, the final sales price was bid to $2,250,000. Thus it appears that defendant's 15% interest in the partnership was considerably *enhanced* by the plaintiffs' participation.

The cases the defendant relies upon to support his contention that the plaintiffs should not have been allowed to bid on the partnership assets all deal with instances where, unlike here, a partner has acted in bad faith, engaged in wrongful or fraudulent conduct, or has attempted to avoid paying an adequate consideration for the minority partner's interest. *See* Graham v. Street, 109 Utah 460, 166 P.2d 524 (1946); Von Au v. Magenheimer, 126 App.Div. 257, 110 N.Y.S. 629 (1908) and Theis v. Spokane Falls Gas Light Co., 34 Wash. 23,

74 P. 1004 (1904). The defendant characterizes the sale to plaintiffs as a forced sale of his partnership interest. However, defendant was not forced to sell his interest to the plaintiffs. He had the same right to purchase the partnership assets as they did, by submitting the highest bid at the judicial sale. His argument that the plaintiffs were bidding "paper" dollars due to their 85% partnership interest is without force. He too could have bid "paper" dollars to the extent of his 15% interest. Moreover, the fact that the plaintiffs could bid "paper" dollars made it possible, as defendant recognizes in his brief, for them to bid higher than outsiders. As a consequence of this ability to enter a higher bid, the value of the defendant's 15% interest in the sale proceeds increased proportionately.

The defendant has cited no cases, nor has this court found any, which have prohibited a partner from bidding at a judicial sale of the partnership assets. The rights of a partner with respect to the partnership property upon dissolution are contained in A.R.S. § 29–238.[1]

---

1. A.R.S. § 29–238 reads as follows:
"A. When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under subsection B, § 29–236, he shall receive in cash only the net amount due him from the partnership.
B. When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:
1. Each partner who has not caused dissolution wrongfully shall have:
(a) All the rights specified in subsection A of this section, and
(b) The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

2. The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under subdivision (b), paragraph 1, subsection B, and in like manner indemnify him against all present or future partnership liabilities.
3. A partner who has caused the dissolution wrongfully shall have:
(a) If the business is not continued under the provisions of paragraph 2, subsection B, all the rights of a partner under subsection A, subject to subdivision (b), paragraph 1, subsection B.
(b) If the business is continued under paragraph 2, subsection B, the right as against his copartners and all claiming through them in respect of their interests in the partnership, to have the value of his interest in the partnership, less any damages caused to his copartners by the dis-

■ It appears that if the defendant has suffered any legal injury as a result of his exclusion from the partnership affairs, then under the facts of this case his remedy would be pursuant to A.R.S. § 29–238, subsec. B, par. 1(b), *supra,* rather than attacking the plaintiffs' participation in the judicial sale. It must be emphasized that on this appeal the defendant does not attack the fact that the trial court ordered a sale of the assets. The only area of attack is that plaintiffs have been allowed to participate and bid in that sale.

■ The defendant makes one final contention which we must consider. He alleges that a statement made by plaintiff's attorney during the course of the bidding had a "chilling effect" on the sale, thus rendering it invalid. See Ex Parte Keller, 185 S.C. 283, 194 S.E. 15 (1937). Counsel's statement was as follows:

"We will close it right now. Bid number two on behalf of the plaintiffs, $2,175,000. Come on, you fellows come up with your cash. *We're prepared to go to three.*" (Emphasis added).

Ten bids were thereafter entered, including one almost immediately following the above statement. This, coupled with the fact that the trial judge, who was in the best position to assess the impact of the remark, indicated that he did not feel it was intimidating, leads us to believe that there is no merit in defendant's contention. The remark was not one which tended to stifle or suppress free competition or bidding as in Ex Parte Keller, *supra.*

■■ In view of all the circumstances of the sale it is our opinion that it was properly conducted and that the trial judge acted within his discretion in confirming it. The method of conducting and the confirmation of a judicial sale lie within the sound discretion of the court ordering the sale. Foster v. Ames, 3 Ariz.App. 206, 412 P.2d 888 (1966). The general policy of

the law is to sustain judicial sales where there has been no injustice. Young Mines Company, Ltd., v. Sevringhaus, 38 Ariz. 160, 298 P. 628 (1931).

The judgment of the superior court is affirmed.

JACOBSON, C. J., and EUBANK, P. J., concur.

---

solution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partner-

ship; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered."