Nick MARAS, Respondent,

v.

Mary Maras STILINOVICH, Appellant.

No. 47548.

Supreme Court of Minnesota.

May 5, 1978.

Pokorny, Erickson, Blanchar & Noter-mann, Minnetonka, for appellant.

Nasi & Rice, Hibbing, for respondent.

Heard before PETERSON, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal from a judgment of the St. Louis County District Court confirming a refer-ee's order dissolving a partnership and or-dering sale of the partnership assets to re-spondent. The referee denied a motion by appellant for amended findings of fact, con-clusions of law, and order for ·judgment. The district court considered a subsequent motion for amended findings of fact, con-clusions of law, and order for judgment, which was denied. We affirm the trial court.

In September 1966, the father of the par-ties to the present action died and left his children interests in a building and business in Hibbing. Appellant and respondent were each left a one-third interest in land and a building and a one-half interest in a tavern and hotel business located in the building.[1] In 1968 the business began as a partnership between the parties to this law-suit. Although no partnership agreement is in the record, the parties stipulated that there was a partnership and that their undi-vided two-thirds interest in the land and building was to be treated as a partnership asset.

During the period from 1968 until the present, a series of disputes arose between the parties and their families over the con-duct of the business. There were mutual accusations of misappropriation of partner-ship funds and unfair dealing, but the ref-eree was unable to accurately determine the truth of the allegations.

On June 18, 1974, appellant filed a sum-mons and complaint seeking dissolution of the partnership. On February 13, 1975, re-spondent filed a similar complaint.[2] In No-vember 1975, an on-the-record stipulation was entered. It was agreed that three ap-praisers would be appointed and that if the partners could not agree to sell to each other a "little auction" would be held. In December 1975, the three appraisers ap-

---

[1] The remaining one-third interest in the land and building was left to a third daughter. The record contains allegations that each party had the support of the third sister, but she was never made a party to the suit. The trial court noted that the remaining one-third interest in the land and building was not affected by the judgment in the present case.

[2] It appears that appellant has had four differ-ent attorneys throughout the course of these proceedings. There is some indication that whenever an attorney suggested settlement he was discharged. Respondent's attorney origi-nally represented the estate of the parties' fa-ther.

praised the value of the building at $50,000 and the business at $45,000. No objections have ever been raised to this appraisal. In January 1976, appellant was temporarily restrained from interfering with the tavern business. In February 1976, when the parties could not agree, a referee was appointed.

A hearing was ordered held on May 13, 1976, but appellant's attorney did not appear. The referee ordered a hearing on June 15, 1976, and ordered the parties to file statements by June 25, 1976. He specifically stated:

"That failure of the parties and their attorneys to appear or submit arguments or evidence shall not deter this Referee from the procedure he has herewith outlined. * * *"

On June 7, 1976, respondent tendered a written offer, in a memorandum to the court, to buy appellant's share of the business and the building for $65,000. Appellant filed two documents which contained statements of her position.

On June 15, 1976, a hearing was held before the referee. Kenneth Lund, the business' accountant, was the only witness. His evidence concerning the financial state of the partnership was offered by appellant and was received by the referee without objection. No formal offer to buy was recorded on behalf of appellant before the referee reached his decision.[3]

On July 7, 1976, the referee issued his findings of fact, conclusions of law, and order for judgment. He found that irreconcilable differences existed and ordered the business sold to respondent for $65,000. Terms were 29-percent down payment ($18,850) and the balance to be paid in monthly installments over 10 years at 6-percent interest. The referee further found that on a view of the evidence most favorable to appellant she was owed $22,896.73 because of differences in capital accounts, unequal draws and other accounting differences. Finally, he ordered alternatives of a sale to appellant or a public sale in the event respondent did not make the required down payment or execute the contract for deed within the specified time limits.[4]

On July 19, 1976, Kenneth Lund, "[u]pon consultation with Margaret Kepler, representative of Mary M. Stilinovich, * * *" wrote to the referee attempting to change his accounting.[5] He contended that an order of the probate court from 1969 would change his accounting and show that appellant was due $34,001.46, plus interest, from respondent. The letter is not sworn or notarized.

Appellant's formal motion for amended findings of fact, conclusions of law, and order for judgment was denied. The referee specifically found that the motion was made in part—

"* * * to hinder a resolvement of the problems involved. Mrs. Stilinovich's changes in attorneys, repeated delays (and attempts) have contributed to the accounting problems and clearly gave this referee, as between the partners, the choice of sale only to Nick Maras."

The district court denied a later motion by appellant for amended findings of fact, conclusions of law, and order for judgment, adopted the referee's findings, and ordered judgment entered.

The issues raised on appeal are:

(1) May a court order dissolution of a partnership and sale of the partnership assets of the business to one partner on an installment basis where the down payment is less than the difference between the partners' capital accounts?

---

3. Neither of the documents presented by appellant to the referee prior to June 25, 1976, contained an offer to buy the business. The first written offer by appellant appeared in a letter from her attorney dated September 3, 1976. The letter was apparently part of the appellant's motion to the referee for amended findings of fact.

4. Respondent has fully complied with all the conditions imposed by the referee.

5. Margaret Kepler, appellant's daughter, had full power of attorney for her mother.

(2) Did the referee err in refusing, after he had reached a decision, to accept additional evidence from the accountant who served both parties?

1. (a) *Sale to respondent.* Although the parties rely primarily on cases decided under Minn.St. 558.01 to 558.32, the partition statute, the trial court specifically stated that this was not primarily a partition action, but was essentially a partnership dissolution in which the undivided two-thirds interest in the land and building was treated as a partnership asset. This conclusion is borne out by the stipulation. Unfortunately, the stipulation is not clear as to whether a sale could be ordered to one partner over the objection of the other. We find the stipulation is broad enough to allow sale to one partner where the other fails to tender a timely bid.

In her brief, appellant appears to concede the propriety of the sale to one of the partners, but she objects to what she alleges was her exclusion from the bidding and objects to the terms of the sale. There is nothing in the record to indicate that she was excluded from the bidding. Respondent made a formal offer and appellant was free to do likewise at any time prior to the issuance of the referee's findings. Allowing her to wait until respondent had bid and until after the referee made a decision would have given her an unfair advantage. By her delay, appellant waived any right to bid; the referee correctly refused to consider the bid made after he issued his order.

After dissolution, a partnership continues until liquidated or wound up. Minn.St. 323.28 and 323.29. Although dissolution of a partnership is usually followed by liquidation, a withdrawing partner may be paid his partnership contribution and share of accumulated profits and no liquidation need occur. *Wathen v. Brown,* 200 Pa.Super. 620, 189 A.2d 900 (1963).

Minn.St. 323.37 provides, in effect, that the partnership affairs must be wound up after dissolution unless otherwise agreed. Crane and Bromberg, Law of Partnership, § 86, suggests that the most logical buyers of a dissolved partnership are the remaining partners, and in the stipulation the parties agreed to one of the partners carrying on the business. Agreements for continuation of partnership business after dissolution are generally valid and enforceable. See, cases collected in Annotation, 160 A.L.R. 523. Oral agreements are generally sufficient to establish a partnership relationship, *Nicholes v. Hunt,* 273 Or. 255, 541 P.2d 820 (1975), and we hold that the oral agreement in this case was sufficient to establish the framework for dissolution of a partnership. The referee was clearly acting within the scope of his powers by ordering the sale to respondent.

(b) *Terms of sale.* Actions for accounting and dissolution of a partnership are equitable actions. *Engel v. Vernon,* 215 N.W.2d 506 (Iowa 1974); *Logoluso v. Logoluso,* 233 Cal.App.2d 523, 43 Cal.Rptr. 678 (1965). Because the record in the present case is in such disarray and because the referee's findings indicate that it would be impossible to determine the truth of the allegations on either side, this court can, at best, determine whether the order of the referee confirmed by the trial court was fair under the circumstances.[6] We will apply the following general principle: The trial court should exercise its powers to find the most advantageous plan which will not prejudice the rights of either party. *Swogger v. Taylor,* 243 Minn. 458, 68 N.W.2d 376 (1955).

The method of conducting and confirming a judicial sale is within the discretion of the court, and the policy of the law should be to sustain judicial sales where no injustice occurs. *Prentiss v. Sheffel,* 20 Ariz.App. 411, 513 P.2d 949 (1973). Thus, if the parties were treated fairly and the rights of appellant were not prejudiced by the terms of the sale, then the trial court should be affirmed.

---

**6.** It should be noted that the case in which the referee is unable to make more explicit findings than those made in the present case should be quite rare. Cf. *Associated Contractors v. Midwest Federal S. & L. Assn.* 304 Minn. 528, 232 N.W.2d 740 (1975).

The total amount of respondent's bid is more than the sum of appellant's interest in the partnership property and the maximum discrepancy between the capital accounts as found by the referee. The referee was unable to make an explicit finding on the amount of money owed to appellant, due in part to a lack of any written partnership agreement. The parties disagreed, for example, on whether the difference in their draws from the business was due to respondent's being paid a salary, appellant's free room and board, or a partner's over-reaching. If the original figures presented by the accountant are to be credited, the figure of $22,895.73 due appellant was correct. Thus, appellant will ultimately receive somewhat more than she would have if a public sale had been held and the appraised value obtained.[7] Respondent, on the other hand, has paid $18,850 and has given appellant a security interest in the business assets and a contract for deed.

The terms of the contract could have been more advantageous to appellant. The down payment is less than the maximum difference from the accounting,[8] and the 6-percent rate of interest on the contract for deed seems low.[9]

■ Notwithstanding these reservations, we uphold the trial court and the referee on the terms of the sale because it appears from the record that the referee could not completely confirm the capital discrepancies alleged to exist by the appellant; it is not certain he could do so even on remand because the partnership agreement was not clear and the truth of the many allegations are buried in invective. Whether appellant was due the full $22,895.73 or not, it was obvious the price received by her was more than her one-half interest in the assets plus that amount. Moreover, 6 percent is the legal rate of interest in this state even though larger amounts are usually charged. On the whole therefore, and in light of the indications that appellant was the primary cause of the parties' inability to reach a settlement, the referee reached a fair result and we can find no reason to reverse his decision.

2. *Failure to consider additional evidence.* Appellant claims that the referee should have considered the additional evidence presented by letter of Kenneth Lund, the accountant for the business. Respondent contends that there was no abuse of discretion by the referee. The "newly discovered evidence" consisted of an order of the St. Louis County Probate Court, dated March 19, 1969, which allegedly showed an additional sum owed to appellant. On the basis of this, Lund claimed that the amount due appellant was $34,001.46 and not $22,-895.73. The referee did not consider the matters prior to July 1, 1968, because they were submitted for the first time at the post trial motion hearing and because those matters were not a part of the cause of action.

■ "Newly discovered evidence" is evidence which could not with reasonable diligence have been produced at trial. In *Caballero v. Litchfield Wood-Working Co., Inc.* 246 Minn. 124, 74 N.W.2d 404 (1956), the court held that if the same diligence which produced the evidence after trial would have led to its discovery before trial relief need not be granted. Kenneth Lund was the business accountant during the probate of the estate as well as during the partnership and he could easily have discovered the profits of the tavern during the 1966 to 1968 period. There is no showing as to why the evidence was not discovered prior to trial. See, *Magnuson v. City of*

7. The referee questioned whether $95,000 could actually be obtained for the property and business.

8. The figure of $22,896 is derived from the accounting of capital accounts, inventory, accumulated depreciation, and other business income. Respondent contended that differences were due to agreements on salary, rent, and utilities for appellant's family. We reserve judgment on the issue of whether a sale can be ordered with a down payment which is less than a clearly determinable capital account difference.

9. The statutory rate of interest is 6 percent per year; the maximum rate on personal loans is 8 percent per year. Minn.St. 334.01, subd. 1.

*White Bear Lake,* 295 Minn. 193, 203 N.W.2d 848 (1973).

 Moreover, the entire question of whether there was in fact a discrepancy in capital accounts was in dispute. Further, in this case there is evidence in the record that any additional claims of capital discrepancy over and above the $22,895.73 were funds involved and detailed in the probate of the estate and properly settled there. We find no abuse of the referee's or trial court's discretion in refusing to reopen the hearing.

The trial court is therefore affirmed.

OTIS, J., took no part in the consideration or decision of this case.