Joseph SCHAEFER, Appellant,

Diane Schaefer, Involuntary Plaintiff,

v.

Charles O. BORK, Respondent.

No. C3-87-503.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Review Denied Dec. 22, 1987.

Tracy R. Eichhorn–Hicks, Meshbesher, Singer & Spence, Minneapolis, for appellant.

Ronald O. Ylitalo, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ.

## OPINION

NORTON, Judge.

In this action for the dissolution and an accounting of a partnership, appellant Joseph Schaefer questions the trial court's determination of his partnership interest. Schaefer further alleges error in the court's disallowance of pre-judgment interest. Respondent Charles Bork challenges the sufficiency of the evidence to sustain the jury's finding that a partnership existed, alleges that any partnership agreement is void under the statute of frauds, and asserts error in evidentiary rulings and jury instructions. We affirm on all substantive issues, but reverse the court's disallowance of pre-judgment interest.

## FACTS

Since 1958, respondent Charles Bork has been involved in the commercial growing and selling of Christmas trees in Minnesota. In the early 1960s, under an oral agreement, Bork formed a partnership with a brother-in-law, Neil Stuempges, for the purpose of expanding this business. The partnership was commonly known as B & S Timber Company. In 1967, Bork and Stuempges dissolved their partnership by written agreement.

Bork then formed another partnership, again by oral agreement, with George Olson and John Currell. This partnership was later expanded to include other persons who owned land upon which some of the trees were grown. Olson and Bork separately entered into yet another oral agreement to form a partnership that succeeded B & S Timber Company, called the B & S Tree Company. Olson and Bork disbanded their partnership in late 1969. The other partnership agreements were also terminated, and by January 1970, Bork was sole owner of B & S Tree Company.

At that time, the business consisted of several hundred acres of wholly owned real estate, upon which were planted between 500,000 and 750,000 evergreen trees, together with trees growing on rented land, with the total number of growing trees approximating one million. In addition, between 1969 and 1975, Bork acquired the right to harvest several hundred thousand trees in the name of B & S Tree Company.

On June 1, 1970, Bork entered into an oral agreement with appellant Joseph Schaefer. Schaefer had previously been an employee of B & S Tree Company. The parties agreed that Bork would contribute the existing assets of B & S Tree Company, and Schaefer would contribute labor and services. The parties further agreed that for the first five years, Schaefer would receive $8200 per year, and thereafter would share equally in the B & S profits. They made no other agreements with regard to the sharing of property, the return of capital, payment of liabilities, methods of dissolving their agreement, or the management of the business.

On October 8, 1982, following a disagreement between the parties, Schaefer withdrew from the business. He then brought suit against Bork on the grounds that their agreement had constituted a partnership. Schaefer asked the court to dissolve the alleged partnership, make an accounting, and enter a money judgment for his share of B & S property and profits. Bork coun-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

terclaimed, denying the existence of a partnership and claiming sole entitlement to all assets of the B & S Tree Company.

The case was heard by a jury in the fall of 1985. By special verdict, the jury found a partnership existed between the parties from June 1, 1970 to October 8, 1982. The jury found that as of October 8, 1982, the partnership had the following net assets: real estate, $254,000; personal property, $264,231; and inventory, $985,536. The jury also found that since 1975 there had been a disparity (to Schaefer's detriment) in the distribution of partnership income.

The trial court adopted the jury's answers to the special verdict interrogatories and made additional findings of fact. Using the amounts found by the jury, the court found the disparity in distribution of profits for the years 1975 through 1982 totaled $428,603.

In addition, the court found that B & S Tree is a "major retailer and wholesaler of Christmas trees throughout Minnesota and the Upper Midwest," that it has a "considerable" business reputation, and that "without the efforts of defendant Charles O. Bork, B & S Tree Company would not enjoy its favorable position in the various markets in which it participates." The court found that Bork was:

> primarily responsible for acquiring real estate, whether owned or rented, seeing to it that great numbers of seedlings were planted and tended to a point that they become saleable Christmas trees, and further directing the expenditure of capital and labor so that the trees would be in marketable condition and would be harvested in such a fashion that they could be marketed during each planting season, growing season, and selling season.

The court concluded that:

> all management decisions, including the expenditure of funds for capital replacement, capital expenditure and all other decisions, were to be made by the authority of defendant Charles O. Bork, exclusively.

The court found that Schaefer's contribution:

was confined to the directing of the labor force, often at the direct suggestion or order of defendant Charles O. Bork, together with contributing to the partnership by assuring that various items of machinery were maintained in proper working order so that trees might be harvested and prepared for sale from time to time when defendant Bork directed that they be made ready for harvesting and eventual sale.

The court also found that only two parcels of the total property controlled by B & S Tree Company were purchased after the partnership began. The court found that Bork supplied the entire purchase price for one of the two parcels, the "Conklin" property, and that he had also contributed all but $15,000 of the purchase price for the other parcel, the "Harmon" property. Further, the court found that as of May 7, 1975, there was a $10,500 mortgage balance on the Harmon property. Finally, the court found that in 1976, over Schaefer's objections, the B & S Tree Company constructed a $35,000 home on the Harmon property as a residence for Schaefer and his family.

Using the jury's findings on the disparity in income distributions, the court awarded Schaefer one-half of that amount, or $214,301.50. The court also awarded Schaefer one-half the mortgage balance on the Harmon property ($5250) and one-half the cost of the residence constructed on the Harmon property ($17,500). The court awarded Bork all right and interest in the partnership property and inventory, which the jury found had a total net value of $1,503,767.

Upon denial of cross-motions for a new trial, Schaefer appealed, and Bork filed a notice of review.

## ISSUES

1. Does the evidence support the jury's finding that there was a partnership?

2. Does the statute of frauds prevent enforcement of the oral partnership agreement?

3. Did the court properly distribute the partnership profits and property?

4. Was there error in evidentiary rulings or jury instructions that warrants a new trial?

5. Is appellant entitled to pre-judgment interest?

## ANALYSIS

1. Respondent challenges the sufficiency of the evidence to support the jury's finding that there was a partnership. In reviewing jury verdicts, all testimony "must be considered in the light most favorable to the prevailing party," and "a verdict will only be disturbed if it is 'manifestly and palpably contrary to the evidence.'" *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980) (citations omitted). "Review is even more limited when the jury verdict must consider the demeanor of the witnesses." *Id.*

■ In its memorandum, the trial court addressed the sufficiency of the evidence question:

The first issue addressed by the jury was the question of whether a partnership existed between plaintiff and defendant Charles O. Bork. The jury answered the question in the affirmative. There was a great deal of evidence supporting this finding, and practically no evidence supporting any other finding. For example, beginning shortly after June of 1970, defendant Charles Bork represented to many other persons, either directly or indirectly, that Joseph Schaefer was a partner in B & S Timber or B & S Tree. Some of the representations were made personally at what were called "tree meetings," as well as in literature associated with the business such as sales receipts and price tags. In addition, heavy support can be found for the jury's finding on the partnership issue from the fact that defendant Bork had been involved with numerous partnerships while in the tree business, including partnerships with at least two other people in the partnership which preceded the one at issue in this case. In addition, Bork had been a partner of other persons in

various tree operations in Dakota County. In short, the jury nearly had no choice but to find a partnership. Had the jury not found a partnership, the Court may well have directed a verdict on the issue in favor of [Schaefer].

The trial court's summary of the evidence showing the existence of the partnership is amply supported by the record, and the jury's finding on this issue is affirmed.

2. Respondent claims the statute of frauds prevents enforcement of the agreement because it was not in writing and was not to be performed within one year from its making. *See* Minn.Stat. § 513.01(1) (1986). Respondent argues the contract term giving Schaefer 50% of the profits after five years sets the minimum term of the contract at five years.

The trial court agreed that the statute of frauds would normally be a complete defense to the action, citing an oral employment contract case. *See Roaderick v. Lull Engineering Co., Inc.*, 296 Minn. 385, 388, 208 N.W.2d 761, 763 (1973) (contract requiring minimum of two years' employment is not to be performed within one year and so is unenforceable under the statute of frauds).

However, the trial court further found that Bork's conduct towards Schaefer during the partnership warranted application of the doctrine of equitable estoppel as an exception to the statute of frauds. *See Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn.1980) ("When an application of the Statute will protect, rather than prevent, a fraud, equity requires that the doctrine of equitable estoppel be applied"). Thus, the trial court found equity supported enforcement of the partnership contract.

■ Although we reach the same result, we disagree with the trial court's reasoning. This is not a minimum term employment contract, incapable of performance within one year, but an ongoing partnership agreement that would terminate whenever either party decided to withdraw. Thus, a different rule controls:

Where no definite time is fixed for the continuance of a partnership, it continues at the will of the partners, and the statute of frauds is not applicable.

*Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App.1985).

■ The effect of part performance on an ongoing partnership contract accounts for the different rule. Uncompleted part performance of an oral employment contract, not to be completed within one year, does not take the contract out of the statute of frauds. *Roaderick*, 296 Minn. at 388, 208 N.W.2d at 763. In contrast, in a partnership contract of indefinite duration, where partners have accomplished the main purpose of their partnership, and where at least one of the partners has performed the agreement, the contract is no longer executory, and the statute of frauds does not apply. *Hammel v. Feigh*, 143 Minn. 115, 118, 173 N.W. 570, 571 (1919).

■ Here, Schaefer was a partner from June 1, 1970 forward, with an initial return from the partnership of $8200 per year. After five years, his return changed to 50% of the profits. The five-year provision neither set the minimum term of the partnership at five years, nor prevented either party from terminating the contract within one year. Both parties performed, and the contract was no longer executory. *See Braaten*, 360 N.W.2d at 456–57 (where oral partnership agreement included a buy-out agreement over a four-year period, the buy-out provision did not extend the term of the partnership to five years; rather, there was no indication that the partners intended to bind the partnership to a definite term).

■ 3. Schaefer claims the partnership agreement extended beyond a sharing of the profits to a sharing of the property. The trial court rejected this claim, finding no evidence of an agreement to share in items other than profits. The court relied on the common law doctrine that:

[A] partner who contributes only services to the partnership is not deemed to have made a capital contribution to the partnership such as to require capital repayment upon dissolution unless the parties have agreed to the contrary.

*Langness v. The "O" Street Carpet Shop, Inc.*, 217 Neb. 569, 353 N.W.2d 709, 712 (1984).

The manner of distributing partnership assets is statutory:

The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

(1) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied;

Minn.Stat. § 323.17(1) (1986).

The court explained its method of distributing the partnership property in a well-reasoned and thoughtful memorandum. Foremost in the court's analysis was its conclusion that appellant's "only interest in this partnership was to a distribution of annual profits." The court found that the "only evidence to the contrary is [appellant's] subjective belief that "partnership" means dividing all of the assets of this enterprise." The court summarized:

The Court is of the feeling that not only is Mr. Bork entitled to the return of his initial capital investment, which cannot be made in kind as the trees have been harvested and sold and replaced by growing trees, and the equipment and vehicles have in large part been used up and replaced by newer materials, hence it is appropriate to return his capital by simply returning in kind all of the trees and all of the equipment.

Motivated by a desire to permit Bork to continue operating B & S Tree Company, the court took "considerable guidance" from the case of *Maras v. Stilinovich*, 268 N.W.2d 541 (Minn.1978). In *Maras*, the supreme court first noted that actions for accounting and dissolution of a partnership are equitable actions. *Id.* at 544. The court continued: "We will apply the following general principle: The trial court should exercise its powers to find the most

advantageous plan which will not prejudice the rights of either party." *Id.* Thus, the trial court here distributed the property consistent with its findings, and further staggered the amounts due appellant because it believed that a payment in cash of the entire sum would destroy the business of B & S Tree.

Appellant nevertheless claims that the court erred in deciding that Bork's contributions equaled the net value of the partnership's real estate, personal property, and inventory. Appellant would have this court return to Bork only the value of B & S Tree on the day the partnership was formed, June 1, 1970. Appellant claims that value is $498,821. However, appellant's method of distribution is again premised on his claim that the parties agreed to share equally in the partnership property, as well as in partnership profits. The evidence does not sustain this underlying assumption, and we affirm the trial court's distribution as within its equitable powers.

4. Respondent claims error in the court's evidentiary rulings and jury instructions. Both of these alleged errors go to the threshold issue of whether a partnership existed. Because the evidence overwhelmingly supports the jury's finding that a partnership existed, any error in the admission of evidence or in jury instructions is harmless.

5. Finally, appellant claims the trial court erred in denying his motion for pre-judgment interest. At the time appellant commenced this action, interest was only required from the time of the verdict. *See* Minn.Stat. § 549.09, subd. 1 (1982). Since that time, however, the statute was amended to also require pre-judgment interest, which is computed "from the time of the commencement of the action." 1984 Minn. Laws ch. 399, § 1 (codified as amended at Minn.Stat. § 549.09, subd. 1 (1986)). An accompanying amendment specifically gave retroactive effect to the new provisions for pre-judgment interest, so that "interest begins to accrue on July 1, 1984 on any pending causes of action." 1984 Minn. Laws ch. 472, § 2.

 Under the amended statute, therefore, appellant is entitled to pre-judgment interest. However, he is not entitled to interest from the date the action was commenced, as he claims, but from July 1, 1984, the date designated in the amended statute. The case must be remanded to the trial court for entry of judgment for pre-judgment interest from July 1, 1984 to the date of the judgment.

## DECISION

The trial court properly determined each party's interest in the partnership, and equitably distributed the partnership assets, consistent with each party's contributions to the partnership and with the partnership agreement. The trial court erred in denying appellant's motion for pre-judgment interest, and the case is remanded for computation and entry of judgment for the appropriate amount of interest.

Affirmed in part, reversed in part, and remanded.